**No. 2023-1073**

---

## In the United States Court of Appeals
## For the Federal Circuit

---

SAVVY DOG SYSTEMS, LLC, POM OF PENNSYLVANIA, LLC,
*Plaintiffs – Appellants*

v.

PENNSYLVANIA COIN, LLC, PA COIN HOLDINGS, LLC
*Defendants – Appellees*

---

Appeal from the United States District Court
for the Middle District of Pennsylvania
No. 19-cv-1470, Hon. Jennifer P. Wilson

---

## CORRECTED BRIEF OF APPELLEES

---

MORGAN, LEWIS & BOCKIUS LLP
Amy M. Dudash
1201 N. Market Street, Suite 2201
Wilmington, DE 19801
(302) 574-7293

MORGAN, LEWIS & BOCKIUS LLP
John V. Gorman
Julie S. Goldemberg
1701 Market Street
Philadelphia, PA 19103
(215) 963-5000

*Counsel for Appellees*

# CLAIM 44

44. An electronic gaming system comprising:

an electronic game terminal including a touch screen display;

a game processor for generating an interactive electronic game on the game terminal, the game processor configured for:

constructing a field having a plurality of elements for the interactive game display wherein each element includes a game symbol from a plurality of predetermined game symbols;

determining at least one winning combination for each play of the game;

testing the game field prior to displaying the game to the player to ensure that a winning combination more valuable than the determined winning combination is not generated inadvertently in completing the field;

automatically displaying an actual game to be played on the touch screen game display to a player prior to initiating activation of game play;

determining if the player has decided to play the displayed game; and

displaying an outcome resulting from play of the displayed game.

**CERTIFICATE OF INTEREST**

**Case Number**    2023-1073

**Short Case Caption**    *Savvy Dog Systems, LLC v. Pennsylvania Coin, LLC*

**Filing Party/ Entity**    Appellees / Pennsylvania Coin, LLC; PA Coin Holdings, LLC

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

*/s/ John V. Gorman*

John V. Gorman
*Counsel for Appellees Pennsylvania Coin, LLC and PA Coin Holdings, LLC*

Dated: April 5, 2023

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☑ None/Not Applicable |
| Pennsylvania Coin, LLC | | |
| PA Coin Holdings, LLC | | |

i

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

| Ahren C. Hsu-Hoffman (Morgan, Lewis & Bockius LLP) | Kenneth J. Davis (Morgan, Lewis & Bockius LLP) | Austin L. Zuck (Morgan, Lewis & Bockius LLP) |
|---|---|---|

5. Related Cases.  Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal.  Do not include the originating case number(s) for this case.  Fed. Cir. R. 47.4(a)(5).  See also Fed. Cir. R. 47.5(b).

☑  None/Not Applicable

6. Organizational Victims and Bankruptcy Cases.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☑  None/Not Applicable

TABLE OF CONTENTS

**Page**

Certificate of Interest ...................................................................................i

Table of Authorities ....................................................................................vi

Statement of Related Cases..........................................................................1

Jurisdictional Statement ..............................................................................2

Statement of the Issues.................................................................................3

Introduction..................................................................................................4

Statement of the Case....................................................................................5

Summary of the Argument...........................................................................16

Argument......................................................................................................18

I.      Standard Of Review............................................................................18

II.     The District Court Correctly Held That All Remaining Claims Of
The '223 Patent Are Patent Ineligible. ........................................18

       A.      The district court correctly held that the claims of the '223
Patent are directed to the abstract idea of rules for playing a
game. ......................................................................................19

             1.     The claimed rules for playing a game can be carried
out by humans, demonstrating that the claims are
directed to an abstract idea. ....................................20

             2.     The '223 Patent does not claim a technological
improvement.............................................................22

       B.      The district court correctly held that the '223 Patent lacks a
transformative inventive concept. .........................................29

**TABLE OF CONTENTS**
(continued)

**Page**

1. The claims' generically claimed computer components do not provide an inventive concept......................................30

2. The '223 Patent does not provide a technological solution to a technological problem. ......................................32

3. The purported novelty of the claims cannot provide an inventive concept......................................33

4. The ordered combination of steps for playing a game does not provide an inventive concept. ......................................36

    a. Savvy Dog waived its ordered combination argument. ......................................36

    b. Even if the Court considers the ordered combination argument, it fails to provide the requisite inventive concept. ......................................38

C. Savvy Dog's preemption arguments cannot save the claims......................................41

III. "An Actual Game To Be Played" Means "The Constructed Game Field Of The Game To Be Played." ......................................42

A. The district court's construction is supported by the plain language of the claims......................................43

B. The district court's construction is supported by the specification......................................46

C. The prosecution history, which should be given "substantial weight" here, confirms the district court's construction. ......................................48

D. The doctrine of claim differentiation cannot support a different construction. ......................................55

iv

TABLE OF CONTENTS
(continued)

**Page**

E.   The district court's construction does not improperly
     exclude preferred embodiments. ........................................................57

Conclusion & Prayer for Relief ........................................................................62

Certificate of Compliance with Rule 32(a) ....................................................63

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
  573 U.S. 208 (2014) ................................................................*passim*

*Andersen Corp. v. Fiber Composites, LLC,*
  474 F.3d 1361 (Fed. Cir. 2007) ...............................................56, 57

*Apple Inc. v. Andrea Elecs. Corp.,*
  949 F.3d 697 (Fed. Cir. 2020) .......................................................58

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.,*
  788 F.3d 1371 (Fed. Cir. 2015) .....................................................41

*Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC,*
  827 F.3d 1341 (Fed. Cir. 2016) .....................................................40

*Bd. of Regents of the U. of Tex. Sys. v. BENQ Am. Corp.,*
  533 F.3d 1362 (Fed. Cir. 2008) .............................................46, 48, 51

*Berkheimer v. HP Inc.,*
  881 F.3d 1360 (Fed. Cir. 2018) .....................................................18

*Braintree Labs., Inc. v. Novel Labs., Inc.,*
  749 F.3d 1349 (Fed. Cir. 2014) .................................................52, 53

*BSG Tech. v. Buyseasons, Inc.,*
  899 F.3d 1281 (Fed. Cir. 2018) .............................................29, 34, 35

*CardioNet, LLC v. InfoBionic, Inc.,*
  955 F.3d 1358 (Fed. Cir. 2020) .....................................................18

*ChargePoint, Inc. v. SemaConnect, Inc.,*
  920 F.3d 759 (Fed. Cir. 2019) .......................................................23

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.,*
  880 F.3d 1356 (Fed. Cir. 2018) .................................................22, 25

vi

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Customedia Techs., LLC v. Dish Network Corp.*,
  951 F.3d 1359 (Fed. Cir. 2020) ........................................................31

*cxLoyalty, Inc. v. Maritz Holdings Inc.*,
  986 F.3d 1367 (Fed. Cir. 2021) ...................................................25, 33

*CyberSource Corp. v. Retail Decisions, Inc.*,
  654 F.3d 1366 (Fed. Cir. 2011) ........................................................20

*Data Engine Techs. LLC v. Google LLC*,
  906 F.3d 999 (Fed. Cir. 2018) ..........................................................28

*DDR Holdings, LLC v. Hotels.com, L.P.*,
  773 F.3d 1245 (Fed. Cir. 2014) ...................................................27, 28

*Dealertrack, Inc. v. Huber*,
  674 F.3d 1315 (Fed. Cir. 2012) ........................................................52

*EcoServices, LLC v. Certified Aviation Servs., LLC*,
  830 F. App'x 634 (Fed. Cir. 2020) ...............................................21, 22

*Edwards Lifesciences LLC v. Cook Inc.*,
  582 F.3d 1322 (Fed. Cir. 2009) ........................................................51

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016) ........................................................28

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
  839 F.3d 1089 (Fed. Cir. 2016) ........................................................24

*Hamer v. Neighborhood Hous. Servs. of Chi.*,
  138 S. Ct. 13 (2017)........................................................................37

*Hylete LLC v. Hybrid Athletics, LLC*,
  931 F.3d 1170 (Fed. Cir. 2019) ........................................................37

*In re Abel*,
  838 F. App'x. 558 (Fed. Cir. 2021) ..................................................31

TABLE OF AUTHORITIES
(continued)

**Page(s)**

*In re Marco Guldenaar Holdings B.V.*,
911 F.3d 1157 (Fed. Cir. 2018) ..................................................................21, 35

*In re Rembrandt Techs., LP*,
496 F. App'x 36 (Fed. Cir. 2012) ..................................................................57

*In re Smith*,
815 F.3d 816 (Fed. Cir. 2016) ......................................................................21, 35

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*,
381 F.3d 1111 (Fed. Cir. 2004) ....................................................................55

*Int'l Bus. Machs. Corp. v. Zillow Grp. Inc.*,
50 F.4th 1371 (Fed. Cir. 2022) ..............................................................26, 27, 32

*Intell. Ventures I LLC v. Capital One Bank (USA)*,
792 F.3d 1363 (Fed. Cir. 2015) ....................................................................30

*Intell. Ventures I LLC v. Symantec Corp.*,
838 F.3d 1307 (Fed. Cir. 2016) ....................................................................39

*Iridescent Networks, Inc. v. AT&T Mobility, LLC*,
933 F.3d 1345 (Fed. Cir. 2019) ..............................................................48, 49, 54

*Jansen v. Rexall Sundown, Inc.*,
342 F.3d 1329 (Fed. Cir. 2003) ....................................................................48

*McRO, Inc. v. Bandai Namco Games Am., Inc.*,
837 F.3d 1299 (Fed. Cir. 2016) ....................................................................21, 27

*Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*,
811 F.3d 1314 ................................................................................................32

*Move, Inc. v. Real Estate All. Ltd.*,
721 F. App'x 950 (Fed. Cir. 2018) ................................................................30

*Multiform Desiccants, Inc. v. Medzam, Ltd.*,
133 F.3d 1473 (Fed. Cir. 1998) ....................................................................56

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Pacing Techs., LLC v. Garmin Int'l, Inc.*,
   778 F.3d 1021 (Fed. Cir. 2015) ....................................................................61

*PersonalWeb Techs. LLC v. Google LLC*,
   8 F.4th 1310 (Fed. Cir. 2021) ......................................................................25

*Pfizer, Inc. v. Teva Pharmaceuticals, USA, Inc.*,
   429 F.3d 1364 (Fed. Cir. 2005) ....................................................................52

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) ....................................................................43

*Planet Bingo, LLC v. VKGS LLC*,
   576 F. App'x 1005 (Fed. Cir. 2014) .............................................................20

*Return Mail, Inc. v. United States Postal Serv.*,
   868 F.3d 1350 (Fed. Cir. 2017) ...............................................................40, 41

*Sage Prods., Inc. v. Devon Indus., Inc.*,
   126 F.3d 1420 (Fed. Cir. 1997) ....................................................................37

*SAP Am., Inc. v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018) ....................................................................30

*Seachange Int'l, Inc. v. C-COR, Inc.*,
   413 F.3d 1361 (Fed. Cir. 2005) ....................................................................56

*Shire Dev., LLC v. Watson Pharm., Inc.*,
   787 F.3d 1359 (Fed. Cir. 2015) ....................................................................48

*SkinMedica, Inc. v. Histogen Inc.*,
   727 F.3d 1187 (Fed. Cir. 2013) ....................................................................52

*Solutran, Inc. v. Elavon, Inc.*,
   931 F.3d 1161 (Fed. Cir. 2019) ....................................................................39

*SpeedTrack, Inc. v. Amazon.com, Inc.*,
   998 F.3d 1373 (Fed. Cir. 2021) ....................................................................18

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.*,
  529 F.3d 1364 (Fed. Cir. 2008) ...............................................................58

*Toshiba Corp. v. Imation Corp.*,
  681 F.3d 1358 (Fed. Cir. 2012) ..........................................................52, 53

*Trading Techs. Int'l, Inc. v. CQG, Inc.*,
  675 F. App'x 1001 (Fed. Cir. 2017) .......................................................26

*Transmatic, Inc. v. Gulton Indus., Inc.*,
  53 F.3d 1270 (Fed. Cir. 1995) ...............................................................55

*Ultramercial, Inc. v. Hulu, LLC*,
  772 F.3d 709 (Fed. Cir. 2014) ...............................................................33

*Vitronics Corp. v. Conceptronic, Inc.*,
  90 F.3d 1576 (Fed. Cir. 1996) ...............................................................43

**STATUTES**

28 U.S.C. § 1295(a)(1).................................................................................2

28 U.S.C. § 1331 .........................................................................................2

35 U.S.C. § 101 ..................................................................................*passim*

**RULES**

Federal Circuit Rule 28(a)(4)......................................................................1

Federal Circuit Rule 47.5 ............................................................................1

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rules 28(a)(4) and 47.5, Appellees Pennsylvania Coin, LLC and PA Coin Holdings, LLC (collectively, "PA Coin") state no other appeals in or from the same civil action or proceeding in the district court were previously before this or any other appellate court.

1

**JURISDICTIONAL STATEMENT**

The district court had jurisdiction under 28 U.S.C. § 1331 and issued its final judgment on September 19, 2022.  Appx122.  This Court has jurisdiction under 28 U.S.C. § 1295(a)(1).

## STATEMENT OF THE ISSUES

1.      Whether the asserted claims of U.S. Patent No. 7,736,223 are patent ineligible under 35 U.S.C. § 101 where the claims recite the abstract idea of rules for playing a game and there is no transformative inventive concept.

2.      Whether the district court properly construed the claim term "an actual game to be played" to mean "the constructed game field of the game to be played" where the construction is supported by the other claim language and the term was added during prosecution after the patentee explained "the actual game to be played" means "the game field constructed."

## INTRODUCTION

Savvy Dog Systems, LLC and POM of Pennsylvania, LLC (collectively, "Savvy Dog")'s arguments do not support reversal of the district court's judgment.

The district court correctly found the patent-in-suit directed to ineligible subject matter. The patent claims simply recite abstract rules for playing a game—where a player is previewed a game before the player decides to play it—carried out on (at most) computer components that, under the district court's undisputed constructions, are generic.

The district court also correctly construed the term "actual game to be played." The court's construction is grounded in the claims, the specification, and the prosecution, during which the applicant coined and used the term to describe a constructed game field to be played by the player.

This Court should affirm the judgment below.

## STATEMENT OF THE CASE

### *State of the Art at the Time of the Alleged Invention as Described in the Patent*

Computerized gambling and skill games are nothing new.  "Amusement and entertainment type electronic games have become very popular with the public." Appx133 at 1:18-19.  One such game is the prior art version of "Tic-Tac-Fruit," a game that presents nine symbols in a 3x3 array to the player, similar to a tic-tac-toe arrangement after the player presses "Play."  Appx1485; Savvy Dog Br. 4-5.  "The player . . . engage[s] in the selection of the appropriate symbol to be replaced with a 'Wild Card' in order to obtain a winning game outcome."  Appx1485; Appx124-125.  Before presenting the puzzle to the player, the game tests the puzzle to ensure that the player cannot obtain a winning outcome more valuable than the outcome determined by the game.  Appx1485.  This prior art version of Tic-Tac-Fruit is referred to herein as the "Prior Art Tic-Tac-Fruit" game.

As popularity of computerized gambling and skill games increased, "several states have legalized certain types of gaming but under heavy regulation."  Appx133 at 1:19-21.  For example, Ohio required that electronic games be skill-based rather than left to chance, meaning "the outcome of play during the game must be controlled by the person playing the game and not by predetermined odds or random chance controlled by the machine."  *Id.* at 1:24-28.  As Savvy Dog recognizes, "[e]merging questions about the legality of the [Prior Art Tic-Tac-Fruit] in Ohio—

whether it truly elevated player skill above the role of chance—prompted [] redesign [of] the game." Savvy Dog Br. 5. As Savvy Dog's attorney explained below, game designers can adjust two variables to make games more harmonious with such state laws as those in Ohio: "[y]ou either elevate the level of skill in the game, and/or you reduce the role of chance in the game." Appx315.

### *The '223 Patent*

U.S. Pat. No. 7,736,223 (the "'223 Patent") discloses a gaming method and system that purports to elevate the level of skill required and decrease the role of chance in games like the Prior Art Tic-Tac-Fruit so they can be legal in states like Ohio. The '223 Patent does this by "providing a game preview display to players of an amusement or entertainment electronic game before playing the game." Appx133 at 1:15-17; Appx123 at Abstract ("A field of game symbols is presented on [a] game display to the player as a preview for deciding whether or not to play the displayed game."). Once the player decides to play the game, "[t]he player's skills enter into play" as the player completes the previewed game field. Appx134 at 4:26-28.

The specification provides an example that shows how the disclosed gaming system follows rules to generate and preview a displayed game to a player and emphasizes the importance of displaying a constructed game field of symbols:

> A **game field is constructed having a plurality of elements** on a game display **wherein each element is filled by a game symbol** from a plurality of available game symbols. The game symbols for each element are automatically determined such that there is no winning

6

combination without player interaction. **The field of game symbols is presented on the game display to the player as a preview for deciding whether or not to play the displayed game**. If the player decides to play the game, the player selects a field element to turn the symbol displayed into a wild symbol. The player's selection of the field element for the wild symbol location is received by the game software which determines each winning combination of symbols that is formed by such wild symbol location selection. Each winning combination of symbols on the field of game symbols is displayed to the player. A new game field could then be constructed and presented on the game display.

Appx133 at 2:12-27 (emphases added); *see also* Appx137 at 10:22-38; Appx124-125 at Figs. 1A and 1B:



FIG. 1A



FIG. 1B

Claim 44 of the '223 Patent, which the parties agree is representative for the patent ineligibility analysis and which also informs the claim construction analysis because it recites nearly identical game rule steps present in each asserted independent claim, is reproduced below.

7

44. An electronic gaming system comprising:

an electronic game terminal including a touch screen display;

a game processor for generating an interactive electronic game on the game terminal, the game processor configured for:

**constructing a field** having a plurality of elements for the interactive game display wherein each element includes a game symbol from a plurality of predetermined game symbols;

**determining at least one winning combination** for each play of the game;

**testing the game field** prior to displaying the game to the player to ensure that a winning combination more valuable than the determined winning combination is not generated inadvertently in completing the field;

**automatically displaying an actual game to be played** on the touch screen game display to a player prior to initiating activation of game play;

**determining if the player has decided to play** the displayed game; and

**displaying an outcome** resulting from play of the displayed game.

Appx140-141 (emphases added).

The '223 Patent steps differ from prior art game steps only in that they preview the game—i.e., display the game field to the player before, not after, initiation of game play.   Appx1509-1511;  Appx418-419  at  52:17-53:4;  Appx1689  ¶¶1-3; Appx1485.

The '223 Patent is directed to solving a legal problem—i.e., whether the game involves sufficient player skill to comply with state gaming law—not a technological

one. All independent claims recite the same rules for playing a game, and none require any particular or special technical components or structure to carry out the steps. Claim 44, as well as claims 13, 15, 18-20, 22, and 45-49, only require the use of a generic "game processor" to carry out the steps. Appx139; Appx141. Claims 1, 3, 5-7, 11, and 37-42 recite methods for carrying out the same steps of claim 44 without identifying any structure for performing them. Appx138-140. And claims 25, 27, 29-31, 33, and 51-56 require that the same steps be carried out only by "program instructions." Appx139-141.

The specification likewise identifies no existing technological obstacle to be overcome by the purported invention. The figures and embodiments describe abstract steps that can be carried out to automatically display a game field of symbols to the player who then plays the game. Figure 6, for example, is reproduced below.



FIG. 6

Appx130.

10

The limited portions of the specification identifying how the steps are carried out state only that they are performed by generic computer tools—"game processors" and "program instructions." Appx133 at 2:28-64.

*Prosecution History*

The patentee originally proposed independent claim 1 with a preview step: "presenting the field of game symbols on the game display as a preview to a player for deciding whether to play the displayed game." Appx770; Appx780. The proposed claim language was first amended to recite "presenting the field of game symbols on the <u>touch screen</u> game display <u>prior to activation of game play</u> as a preview to a player for deciding whether to play the displayed game." Appx855; Appx867. In its applicant remarks, the patentee explained that this amendment meant "**the actual game that the player would play is displayed** before the player makes any commitment to playing the game." Appx877 (emphasis added).

Later the patentee changed the limitation, which at that point in prosecution appeared near-identically in every proposed claim, to read "<u>automatically displaying</u> ~~presenting~~ the <u>game</u> field ~~of game symbols~~ on the touch screen ~~game~~ display <u>to a player</u> prior to <u>initiating</u> activation of game play ~~as a preview to a player for deciding whether to play the displayed game~~." Appx906; Appx918. The patentee explained that "[t]his recitation clarifies that **the actual game to be played (i.e., the game field constructed in the first recited step)** is automatically displayed to the player

11

in order for the player to decide whether to initiate play of the game displayed." Appx931 (emphasis added); *see also id.* (patentee explaining "[w]hen the player hits the Play button, he is initiating play of the actual game field that is displayed. Thus, the player can **study the game field** carefully to determine the optimum location of the wild symbol before he makes any commitment to play the displayed game.") (emphasis added). After the patentee explained the importance and meaning of the preview step, the examiner added the patentee's "actual game to be played" language into the claims through an examiner amendment. *See* Appx960; Appx965. The "actual game to be played" language exists nowhere in the specification and nowhere else in the intrinsic record.

### *Procedural History*

Savvy Dog filed a complaint in 2019 alleging that PA Coin infringes the '223 Patent. Appx148. PA Coin moved to dismiss the action under 35 U.S.C. § 101. Appx150; Appx498-500. After briefing and oral argument, the district court ruled that claim 44 of the '223 Patent is representative for the ineligibility analysis. Appx52.[1] The district court held that claim 44 is directed to "rules for playing a game, and is thus an abstract idea within the meaning of *Alice* [*Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014)] step one." Appx51-52; Appx58. When

---

[1] Savvy Dog neither challenged this finding below nor challenges it in this Court. Appx98.

considering *Alice*'s step two, the district court relied on statements that Savvy Dog's counsel made for the first time at oral argument regarding "the firmware in the game processor," concluded that whether the "technology embedded into the game processor is . . . an 'inventive concept' is a question of fact that the" district court could not "determine at this early stage of litigation," and denied PA Coin's motion. Appx61-62.

PA Coin proceeded to answer the complaint and assert a patent ineligibility counterclaim. Appx701; Appx720. On August 31, 2020, Savvy Dog filed a statutory disclaimer with the Patent and Trademark Office disclaiming thirty-nine claims. Appx2120. Thirty-six claims remained.

On December 21, 2020, the district court construed many relevant claim terms not challenged by Savvy Dog on appeal:

- "winning combination" means "array of game symbols in the game field yielding a successful outcome," Appx93;

- "[determining/determine/determined] at least one winning combination for each play of the game" means "establish or ascertain at least one winning combination, properly construed, for each game to be played," *id.*;

- "test[ing] the game field prior to displaying the game to the player to ensure that a winning combination more valuable than the determined winning combination is not generated inadvertently in completing the field" means "test[ing] the game field prior to displaying the actual game to be played to the player to ensure that a winning combination more valuable than the previously determined winning combination, properly construed, is not generated inadvertently when the player

completes a winning combination during play of the game," Appx93-94;

- "game processor" means "a CPU or microprocessor that executes program instructions to generate a game," Appx94; and,

- "program instructions" means "conventional commands that can be executed by a computer," *id.*

The only construction Savvy Dog disputes is "[a]n actual game to be played." Savvy Dog Br. 2. This term is found in the limitation "automatically displaying an actual game to be played on the touch screen game display to a player prior to initiating activation of game play" and in the construed "testing" limitation. Appx140. The district court construed "an actual game to be played" to mean "the constructed game field of the game to be played." Appx85; Appx94. This construction is consistent with the specification and the prosecution history.

Savvy Dog contends that "an actual game to be played" means "the game to be played, including an otherwise unknown system-generated attribute of it." Savvy Dog Br. 40. Under Savvy Dog's construction, display of an "actual game to be played" to a player would not necessarily present a player with a game field of symbols to play, just some "attribute" of a game, like the amount of money that might be won if the game were played. *See id.* at 45 ("The preview screen could instead simply present, for example, a maximum award that could be won when the next game is played."). This runs contrary to the patentee's statements to the examiner about showing players the actual games they would play so they can study

14

the game fields before deciding to play the game, thereby increasing the role of skill and decreasing the role of chance.

In view of the district court's construction, Savvy Dog conceded it could not establish that PA Coin infringes the asserted claims of the '223 Patent (i.e., claims 44, 47, 49-51, 54, and 56) and moved for judgment of noninfringement and dismissal of PA Coin's counterclaim so Savvy Dog could appeal. Appx157 (Dkt. 117). The district court denied the request and permitted PA Coin to proceed on its ineligibility counterclaim, which applies to all non-disclaimed claims (i.e., claims 1, 3, 5-7, 11, 13, 15, 18-20, 22, 25, 27, 29-31, 33, 37-42, 44, 45-49, and 51-56). Appx158 (Dkt. 136); Appx99; Appx2092-2095. The parties subsequently filed a stipulation of noninfringement of the asserted claims. Appx2092-2095; Appx95; Appx100.

Following fact and expert discovery, PA Coin moved for summary judgment that the '223 Patent claims are patent ineligible. Appx1454. The district court granted PA Coin's motion. Appx120-122. Specifically, the district court held that its prior ruling that the claims are directed to an abstract idea of rules for playing a game was the law of the case. Appx108-109. And the district court held that none of the claimed elements, either individually or as an ordered combination, transform the abstract idea into an inventive concept. Appx120. This appeal followed. Appx2109-2112.

15

## SUMMARY OF THE ARGUMENT

The claims of the '223 Patent are ineligible because they are directed to the abstract idea of rules for playing a game—rules that include previewing a game to a player before the player initiates game play—and lack an inventive concept that adds anything beyond this abstract idea.

At *Alice* Step 1, the claimed rules for playing a game can be carried out by humans, demonstrating their abstract nature, and the claims do not purport to provide any technological improvement.

At *Alice* Step 2, after removing the abstract rules of playing the game, all that is left is at most generic computer components. Savvy Dog explicitly waived its argument that the ordered combination of steps constitutes an inventive concept below, but in any event it does not because the steps were known in the prior art. This Court has held that merely reordering known steps without more is insufficient to pass *Alice* Step 2 muster.

If the Court reaches the claim construction dispute, the inconsistency in Savvy Dog's positions becomes apparent. Savvy Dog retreats from its stance that the preview step is inventive because it provides for a greater skill-based game. Instead, Savvy Dog argues the preview step can be a preview of any game attribute, such as the amount of money that might be won. But such an interpretation is inconsistent with the claims, the specification, and most importantly, the prosecution history—

16

where the patentee first introduced the term "an actual game to be played," stressed the importance that the player be able to study the constructed game field before deciding whether to play, and told the examiner the term should be equated with "the game field constructed" in the earlier step of the claim.  In view of this intrinsic evidence, this Court should adopt the district court's construction of "an actual game to be played" as meaning a "constructed game field of the game to be played."  The judgement below should be affirmed.

## ARGUMENT

### I.    Standard Of Review.

Patent eligibility under Section 101 is a question of law that may contain underlying issues of fact.  *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018).  This Court reviews de novo a determination that a claim is directed to patent-ineligible subject matter.  *CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1367 (Fed. Cir. 2020).

This Court reviews a district court's ultimate interpretation of a claim term as well as its interpretations of evidence intrinsic to the patent de novo and a district court's subsidiary factual findings about extrinsic evidence for clear error.  *SpeedTrack, Inc. v. Amazon.com, Inc.*, 998 F.3d 1373, 1378 (Fed. Cir. 2021).

### II.    The District Court Correctly Held That All Remaining Claims Of The '223 Patent Are Patent Ineligible.

Section 101 describes subject matter that is eligible for patenting but "contains an important implicit exception" for abstract ideas, such as fundamental practices, human organizational concepts, and mental processes.  *See Alice*, 573 U.S. at 216.  The Supreme Court's two-step *Alice* framework governs whether claims pass Section 101's eligibility threshold.

In the first step, the Court determines "whether the claims at issue are directed to a patent-ineligible concept," such as an abstract idea.  *Id.* at 218.  If the claims are so directed, the Court moves to a second step to evaluate whether there is "an

18

inventive concept—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* at 217-18 (quotations marks omitted). Merely carrying out an abstract idea using existing computer technology does not amount to significantly more than the ineligible concept itself and does not transform the ineligible concept into a patentable invention. *See id.* at 222.

The district court correctly determined that the asserted claims of the '223 Patent are directed to the abstract idea of rules for playing a game and that the claims lack an inventive concept, making them patent ineligible. Appx120. None of Savvy Dog's arguments on appeal demonstrate any error in the district court's analysis.

**A.    The district court correctly held that the claims of the '223 Patent are directed to the abstract idea of rules for playing a game.**

The district court correctly determined at *Alice* Step 1 that the '223 Patent was directed to the abstract idea of rules for playing a game. Appx58. Distilled to its simplest form, claim 44[2] is just a series of high-level steps that broadly establish how a "preview" game would be played: (1) constructing a field of game symbols, (2)

---

[2] The district court correctly held claim 44 as representative for the ineligibility analysis. Appx52; Appx98. Claim 44 recites the same rules for playing a game that are in every remaining independent claim. Savvy Dog neither challenged the representativeness finding below nor challenges it in this Court. Appx106. While Savvy Dog argues for patent eligibility based on the "game processor" recited in claim 44, most of the claims do not recite a "game processor" for carrying out the game rules, so such processor is not a reason why claim 44 is representative.

determining a winning combination of game symbols for the game field for each play of the game, (3) testing the game field to ensure that a player cannot complete a combination of game symbols in the game field that is more valuable than the determined winning combination, (4) previewing the game field to the player prior to the player activating gameplay, (5) determining if the player has decided to play the game, and (6) displaying an outcome resulting from play of the displayed game. Appx140-141; Appx93-94; *see also* Appx209 at 5-6 (Savvy Dog's counsel acknowledging that "it's fair to characterize [those steps as] rules for setting up a game to be played.").

> **1.    The claimed rules for playing a game can be carried out by humans, demonstrating that the claims are directed to an abstract idea.**

This Court has held that when all the claimed steps could be performed entirely by humans, that is a strong indication that the patent claim is directed to an abstract idea. *See, e.g.*, *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011) ("It is clear that unpatentable mental processes are the subject matter of claim 3. All of claim 3's method steps can be performed in the human mind, or by a human using a pen and paper."); *Planet Bingo, LLC v. VKGS LLC*, 576 F. App'x 1005, 1007 (Fed. Cir. 2014) (computerized bingo management system abstract given that managing bingo "can be carried out by a human"). Indeed, this Court has repeatedly held that gaming-related claims are directed to abstract

concepts. *See, e.g.*, *In re Marco Guldenaar Holdings B.V.*, 911 F.3d 1157, 1160, 1162 (Fed. Cir. 2018) (method of playing dice game invalid); *In re Smith*, 815 F.3d 816, 818-19 (Fed. Cir. 2016) (rules for playing card game invalid).

In this case, the claimed rules for playing a game can be carried out by humans using a standard deck of cards. For example, a dealer can (1) construct a game field by dealing out nine cards in a 3x3 configuration face down, (2) determine what will constitute a winning combination of cards (e.g., three heart cards in a row like tic-tac-toe), (3) test the field by peeking at the dealt cards to make sure the player cannot use a wild card to get a more valuable combination of cards than hearts (e.g., three diamonds in a row), (4) preview the game field to a player by turning the cards over, (5) determine if the player wants to play the game, and (6) display the outcome resulting from the play of the game. Appx515-517; Appx399-400. Savvy Dog admits these rules can be carried out **without** a computer. Appx409 ("[W]e obviously don't dispute the nature of human interaction, nor can we with respect to the card game.").

Nonetheless, Savvy Dog argues that the "persuasiveness of an analogy to human activity" was refuted by this Court recently. Savvy Dog Br. 31 (citing *EcoServices, LLC v. Certified Aviation Services, LLC*, 830 F. App'x 634, 642-45 (Fed. Cir. 2020)). Savvy Dog is incorrect. In *EcoServices*, this Court—quoting *McRO, Inc. v. Bandai Namco Games Am., Inc.*, 837 F.3d 1299, 1313 (Fed. Cir.

21

2016)—recognized that "processes that automate tasks that humans are capable of performing are patent eligible **if properly claimed**." 830 F. App'x at 645 (emphasis added). But this does not undermine the fact that merely invoking computers as a tool to perform tasks that could be performed by humans cannot save a claim from being abstract. *See Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361-62 (Fed. Cir. 2018) (distinguishing improvements in computing capabilities from "'abstract idea[s]' for which computers are invoked merely as a tool"). The '223 Patent does not "properly claim" a non-abstract automated process for carrying out the game rules. Claim 44, like all the '223 Patent claims, is directed to rules for playing a game carried out by, at most, generic computer components. Appx94 (unchallenged generic constructions of "game processor" and "program instructions").

### 2.    The '223 Patent does not claim a technological improvement.

To overcome the abstractness of the claimed rules for playing a game, Savvy Dog recharacterizes claim 44 in various ways. At page 23, it states that claim 44 is directed to a "technological improvement"—namely, an allegedly novel game processor specifically-programed with several sequential functions carried out on a game terminal with a touch screen display. Savvy Dog Br. 23. At page 32, Savvy Dog alleges that claim 44 is "directed to a particular sequential manner of testing a game field and previewing an actual game to be played in an electronic gaming

terminal." Savvy Dog Br. 32. And to the district court, Savvy Dog alleged that claim 44 "is directed to a gaming system comprising a <u>tangible</u> game processor specially configured to test and preview a game." Appx543. But Savvy Dog never explains how this alleged specifically programmed game processor is a technological improvement over anything. It is not.

The lack of technological improvement in the computer is highlighted by the fact that the "game processor" is only mentioned in a third of the remaining '223 Patent claims. Although the parties agree that claim 44 of the '223 Patent is representative for the ineligibility analysis, the fact that the "game processor" is not recited in most of the remaining claims (1, 3, 5-7, 11, 13, 15, 18-20, 22, 25, 27, 29-31, and 33) demonstrates that there is nothing special about the processor. The other claims evidence the same rules for game play can be carried out without it.

Further, claim 44 mentions a "processor" but contains no language requiring the processor to be "specifically-programed," and there is nothing "novel" about a generic computer. Nor does the specification "suggest[] that the [processor] itself is improved from a technical perspective, or that it would operate differently than it otherwise could." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 768 (Fed. Cir. 2019). Instead, the processor is described merely as a means for carrying out the steps of game play. *See* Appx133 at 2:28-45 (describing "[a] game processor [that] generates an electronic game display on a game terminal" that carries out the

23

claimed rules); Appx134 at 4:40-43 (describing processor as carrying out steps). Further, the district court—in a construction Savvy Dog does not challenge on appeal—construed the claimed "game processor" to be "a CPU or microprocessor that executes **program instructions** to generate a game." Appx94. The district court, in turn, construed "program instructions" to mean "conventional commands that can be executed by a computer." *Id*. Thus, under the unchallenged district court constructions, the game processor is not some technological advancement as Savvy Dog now argues; it is merely a conventional computer that generates a game.

That this game is then displayed on an electronic gaming terminal with a touch screen is far from a technological advancement. Even Savvy Dog acknowledges that electronic gaming terminals with touch screens were known and implemented in the Prior Art Tic-Tac-Fruit. Savvy Dog Br. 24. At bottom, "the focus of the claims is not on an improvement in computers as tools, but on [a] certain independently abstract idea"—rules for playing a game—"that use[s] computers as tools." *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1095 (Fed. Cir. 2016).

Savvy Dog alleges "prior art gaming terminals were not capable of performing this style of game [] at least not without substantial reconfiguration." Savvy Dog Br. 24. But Savvy Dog cites no support for its newfound assertion, which it never raised below in its Statement of Facts or even in its expert report submitted therewith.

Nor could Savvy Dog, as its named inventor and expert each admitted that the claimed game can be implemented on existing, off-the shelf, prior art game processors. Appx1691 ¶5; Appx1693 ¶10. And, as discussed *supra*, the '223 Patent differs from prior art game terminals only in when (not how) the game field is displayed—i.e., before, not after, initiation of game play. In any event, Savvy Dog's argument incorrectly confuses alleged novelty with the Step 1 patentability inquiry. *See cxLoyalty, Inc. v. Maritz Holdings Inc.*, 986 F.3d 1367, 1380 (Fed. Cir. 2021) ("[O]ur cases are clear that a patent claim is not eligible under § 101 merely because it recites novel subject matter."). As this Court has aptly recognized, "[a] claim for a new abstract idea is still an abstract idea." *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1318 (Fed. Cir. 2021).

Savvy Dog's efforts to morph the claimed rules for game play into a specific technological improvement by pointing to the arguably technological words of claim 44 ("processor," "touch screen display," and "electronic game terminal") fail. Faced with similar arguments, this Court has repeatedly held claims to be patent ineligible that rely on a computer merely as a tool to carry out the abstract idea, which is precisely what claim 44 does here. *See, e.g., Core Wireless*, 880 F.3d at 1361-62 (distinguishing patent-eligible claims that "are directed to a specific improvement in the capabilities of computing devices," as opposed to "'a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool'"). To be patent

eligible, the claim must be directed to "specific technologic modifications to solve a problem or improve the functioning of a known system." *Trading Techs. Int'l, Inc. v. CQG, Inc.*, 675 F. App'x 1001, 1004-05 (Fed. Cir. 2017).

This Court's opinion in *International Business Machines Corp. v. Zillow Group Inc.*, 50 F.4th 1371, 1380-81 (Fed. Cir. 2022) ("*IBM*"), is instructive. The claims in *IBM* were directed to the abstract idea of displaying layered data on a map. *Id.* In finding that the claims fail *Alice*'s Step 1, this Court explained the claims (1) "do not recite an improvement in any computing technology," as they require an off-the-shelf processor; (2) "do not improve the functioning of the computer, make it operate more efficiently, or solve any technological problem," as "[i]nstead, they recite a purportedly new arrangement of generic information that assists [users] in processing information more quickly"; (3) "describe various operations (selecting, identifying, matching, re-matching, applying, determining, displaying, receiving, and rearranging), without explaining how to accomplish any of the tasks"; and (4) "do[] not sufficiently describe how to achieve these results in a non-abstract way." *Id*.

(1) As in *IBM*, claim 44 does not recite an improvement in any computing technology, as it requires only an off-the-shelf processor. Appx1691 ¶5; Appx1693 ¶10. (2) As in *IBM*, claim 44 does not improve the functioning of the computer or solve any technological problem, rather it merely recites an arrangement of steps to

26

preview a game field to avoid a legal problem.  Appx1692 ¶8.  (3) As in *IBM*, claim 44 describes various operations (constructing a game field of game symbols, determining a winning combination of game symbols, testing the game field, previewing the game field to the player, determining if the player has decided to play the game, and displaying an outcome) without explaining how to accomplish any of them.  Appx140-141.  And, (4) as in *IBM*, claim 44 does not explain how to achieve the results in a non-abstract way.  *Id.*  As in *IBM*, claim 44 is directed to an abstract idea.

Savvy Dog cites various cases holding that technological innovations are non-abstract, but these cases are inapposite where (as here) there is no technological innovation claimed.  For instance, in *McRO*, this Court held claims directed to the computer generation of facial expressions and lip movements on three-dimensional animated characters were patent eligible because the invention was "directed to a patentable, technological improvement over the existing, manual 3-D animation techniques" and achieved "an improved technological result."  837 F.3d at 1316.  There is no similar technological improvement or result claimed in the '223 Patent.

Likewise, in *DDR Holdings, LLC v. Hotels.com, L.P.*, this Court held asserted claims eligible because they addressed an "internet-centric" problem and claimed a specific solution that was "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks."  773

F.3d 1245, 1258, 1257 (Fed. Cir. 2014). Unlike the '223 Patent—where some claims recite no means of carrying out the game steps, and the other claims require only a generic processor or program instructions to do so—the *DDR* patent provided a technological solution to a technological problem.

Similarly, in *Data Engine Technologies LLC v. Google LLC*, this Court upheld eligibility of claims directed to a specific method of navigation through three dimensional spreadsheets because the claimed technological improvement "allowed computers, for the first time, to provide rapid access to and processing of information in different spreadsheets." 906 F.3d 999, 1008 (Fed. Cir. 2018). And in *Enfish, LLC v. Microsoft Corp.*, this Court upheld eligibility of claims "specifically directed to a self-referential table for a computer database" where the claimed technological improvement "increased flexibility, [resulted in] faster search times, and [had] smaller memory requirements." 822 F.3d 1327, 1337 (Fed. Cir. 2016). Unlike in *Data Engine* and *Enfish*, where the patents claimed "implement[ation] [of] an improvement in electronic [] functionality," 906 F.3d at 1011, here, there is no similar technological improvement claimed in the '223 Patent. Indeed, claim 44 is more akin to the claim in *Data Engine* that this Court held patent-ineligible because it was "not limited to the specific technical solution and improvement" found in other claims. *Id.* at 1012.

28

Although it fights it now, Savvy Dog conceded below that the *Alice* Step 1 analysis is a "close call." Appx55. But it is not. For the foregoing reasons, claim 44, along with all the '223 Patent's claims, are directed to the abstract idea of rules for playing a game.

**B.  The district court correctly held that the '223 Patent lacks a transformative inventive concept.**

Aside from the abstract idea, "[w]hat else is there in the claims before us?" This is the question that this Court asks at *Alice* Step 2. *BSG Tech. v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018). Savvy Dog struggles to answer this question as it cannot point to any inventive concept that is in the claims beyond the abstract idea.

Savvy Dog's purported inventive concept is a moving target. Below, and at times on appeal, Savvy Dog asserts that the inventive concept is a processor configured to carry out the steps in the claim. Appx1664-1665; Appx406; Appx417; Savvy Dog Br. 33. But, as is explained herein, this is just the implementation of abstract game rules on generic components that is insufficient to pass *Alice* Step 2 muster.

Savvy Dog also suggests the inventive concept could be the ordered combination of steps itself. Savvy Dog Br. 34. But, as explained herein, Savvy Dog explicitly waived this argument below. And in any event, reordering steps of known game play cannot be an inventive concept under this Court's precedent.

29

Because the '223 Patent claims "do[] not provide any specific showing of what is inventive about the [limitation] or about the technology used to generate and process it," "the claims do not satisfy *Alice*'s second step." *Move, Inc. v. Real Estate All. Ltd.*, 721 F. App'x 950, 957 (Fed. Cir. 2018); *see also Intell. Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1368 (Fed. Cir. 2015) ("instructing one to 'apply' an abstract idea and reciting no more than generic computer elements performing generic computer tasks does not make an abstract idea patent-eligible").

### 1.    The claims' generically claimed computer components do not provide an inventive concept.

Savvy Dog has conceded that the '223 Patent claims that do not recite a game processor for performing the game rules (i.e., claims 1, 3, 5-7, 11, 25, 27, 29-31, 33, 37-42, and 51-56) do not recite an inventive concept.  Appx406-407 at 40:21-41:1.  But the remaining claims like claim 44 that do recite a "game processor" lack an inventive concept too.  Under the district court's unchallenged constructions of "game processor" and "program instructions," the claimed game processor is merely a central processing unit or microprocessor that executes conventional computer commands to generate a game.  Appx91.  Simply carrying out abstract steps on a such a generic CPU or microprocessor is insufficient to pass *Alice*'s Step 2.  *See SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1169-70 (Fed. Cir. 2018) (no inventive concept where "it is clear, from the claims themselves and the specification, that these limitations require no improved computer resources [that

patentee] claims to have invented, just already available computers, with their already available basic functions, to use as tools in executing the claimed process"); *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1364 (Fed. Cir. 2020) (to provide "inventive concept," "it is not enough [] to merely improve a fundamental practice or abstract process by invoking a computer merely as a tool").

Further, nothing in the claims (or anywhere else in the '223 Patent) suggests that the claimed game processor itself is improved from a technical perspective or that it would operate differently than it otherwise could. *See In re Abel*, 838 F. App'x. 558, 562 (Fed. Cir. 2021) (patent claims ineligible because "nothing in the claims at issue here recites a particular improvement in how computers carry out the basic functions relevant to implementing the abstract idea").

Like it did below, Savvy Dog contends that the claimed "game processor" is an inventive concept because it is "specially-configured." Savvy Dog. Br. 2. But its expert admitted the claimed invention could be implemented using a "conventional, off-the-shelf CPU or microprocessor." Appx1514 at 132:7-17; Appx1513 at 131:8-18. And Michael Pace—the named inventor of the '223 Patent—admitted that an embodiment of his purported invention could have been implemented on a game board existing in the 1990s. Appx1693 ¶10.

Claim 44 provides no detail about the purported configuration of this generic processor. Instead, it recites only functions of the processor (i.e., constructing,

31

determining, testing, displaying) without describing **how** they are performed. *See IBM*, 50 F.4th at 1382 (finding no inventive concept in claims reciting generic computer components and their functional steps without describing how functions are performed). Indeed, Savvy Dog's expert conceded that the claimed processor is only "specially configured" insofar as it is carrying out the steps of game. Appx1512 at 130:11-21 ("any processor that's running any program is specially configured to do whatever it does").

Thus, Savvy Dog's repeated assertions that the claims contain an inventive concept in how the processor is "configured" fail.

### 2. The '223 Patent does not provide a technological solution to a technological problem.

Nothing in the '223 Patent suggests that the claimed abstract rules provide a concrete, non-abstract technological advancement, i.e., a technical solution to a technical problem. *See Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1325 (finding claims invalid at *Alice* Step 2 because nothing in claims purported to improve functioning of computer itself or "effect an improvement in any other technology or technical field"). Thus, as the district court correctly held, these rules do not provide the requisite inventive concept. Appx119.

Savvy Dog takes issue that the district court supposedly relied on the undisputed fact that the patentee created the claimed invention in response to a legal issue. Savvy Dog Br. 39-40. Savvy Dog misses the point. The district court

32

examined the patent specification, which described the desirability of creating games of "skill" to avoid running afoul of certain state gambling laws. *See* Appx133 at 1:21-32. This is the problem the invention intended to solve—something this Court routinely considers in assessing patent eligibility. *See, e.g.*, *cxLoyalty*, 986 F.3d at 1378 (holding patent did not claim inventive concept because purported problem was not "a technological problem requiring a solution that improves the performance of the computer system itself"). Thus, it was not error for the district court to consider the purpose of the invention in assessing *Alice*'s Step 2 and holding that the purported invention claimed in the '223 Patent was meant to solve a legal problem, not a technological one.

### 3. The purported novelty of the claims cannot provide an inventive concept.

Savvy Dog argues that since the claims are allegedly novel, they must pass *Alice*'s Step 2. Savvy Dog Br. 35 (citing, *inter alia*, expert testimony about the alleged novelty). But the two limitations Savvy Dog identifies in its brief, testing and displaying of the game field, are not independently novel. Both were undisputedly performed in the Prior Art Tic-Tac-Fruit game, just arguably at a different time relative to when the player initiated game play. *See infra* at B.4.b.

Even if the '223 Patent's reordering of known game steps were somehow novel, there would be no inventive concept because, novel or not, the steps are no more than the abstract rules for playing a game themselves. *See Ultramercial, Inc.*

*v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014) ("That some of [these] steps were not previously employed in this art is not enough—standing alone—to confer patent eligibility upon the claims[.]").

In *BSG*, this Court explained that at *Alice* Step 2 courts are to consider only "claim limitations **other than** the invention's use of the ineligible concept to which it was directed" in determining whether a limitation is "well-understood, routine, and conventional." 899 F.3d at 1290 (citations omitted) (emphasis added). Thus, in *BSG*, because the only allegedly unconventional features of the claims at issue were themselves abstract, this Court never considered their purported unconventionality and instead affirmed summary judgment of patent ineligibility. *Id.* at 1291. The district court followed this Court's guidance in *BSG* and correctly held that there was no relevant fact issue precluding summary judgment here. Appx116-117.

Savvy Dog attempts to get around this Court's caselaw by alleging that both the "testing" and "automatically displaying" are not part of the abstract idea of "rules for playing a game" because these steps are "invisible to the game player." Savvy Dog Br. 37. But there is no requirement that the game player participate in each abstract rule. Nor does the fact that the claimed game system, as opposed to the player, carries out a rule make it less abstract. And Savvy Dog has admitted that the "automatically displaying step" **does** involve the player; indeed, it has argued that this step of previewing the game field to the player is the heart of the claimed

invention.  Appx314-315 at 77:23-78:6 ("[T]he entire context of this invention is about creating a gaming platform that allows for skill to predominate over chance . . . if the player is seeing a critical aspect of the game to be played, then that is lessening the role of chance in the game because the player already knows that attribute").

Savvy Dog's argument is also undermined by this Court's other precedent.  In *In re Smith*, this Court held that a claim step requiring "shuffling the physical playing cards" was part of the abstract idea of rules of a game even though it was not performed by the player and was a precursor to the player involvement.  *See* 815 F.3d at 817.  Likewise, in *Marco*, this Court held a step of providing dice with a specific set of characteristics was part of the abstract idea of a set of rules for a game although it was a precursor to the player involvement.  911 F.3d at 1161.  In these cases, the identified limitations could not transform the abstract ideas because they were part of them.  So too here: testing and automatically displaying a game field before the player plays the game is part of the abstract idea of rules for playing a game.

As *BSG* and this Court's other decisions make clear, this Court need not consider whether it was "well-understood, routine, and conventional" to perform the particular claimed steps because that is nothing more than part of the abstract game rules.

**4.     The ordered combination of steps for playing a game does not provide an inventive concept.**

Savvy Dog also claims an inventive concept can be found in the "ordered steps" of "both test[ing] the game field and preview[ing] the game, before the player decides whether to play the game." Savvy Dog Br. 34. However, Savvy Dog expressly waived this argument. And, to the extent the Court considers it on the merits, it should be rejected.

**a.     Savvy Dog waived its ordered combination argument.**

Below Savvy Dog expressly waived its argument that the ordering of steps supplied an inventive concept:

> Court: [Y]ours is an elements only argument, not an ordered combination argument. Is that right?
>
> Savvy Dog's Attorney: That's right. The game processor as configured is an element. It's not a method claim so these are not what follows in the configuration, **it's not the ordering of steps**. It's describing the configuration of the game process, so it's a single element.

Appx210-211 (emphasis added); *see also* Appx552 at n.5 (Savvy Dog brief stating "the claim language . . . does not specifically state that the configuration of the processor must follow any sequential order."). Consistent with these statements, nowhere in Savvy Dog's summary judgment or motion to dismiss papers did Savvy Dog argue that the claims of the '223 Patent had an inventive concept due to the ordering of steps. *See* Appx534; Appx1660.

36

Waiver arises in situations like this one, where a party intentionally renounces a specific argument at the district court. *See Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 17 n.1. (2017). Thus, it is disingenuous for Savvy Dog to now claim the district court erred by not "provid[ing] [an] express discussion regarding whether the ordered combination of these elements constitutes an inventive concept as required by established precedent." Savvy Dog Br. 38; *see Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1426 (Fed. Cir. 1997) ("If a litigant seeks to show error in a trial court's overlooking an argument, it must first present that argument to the trial court."); *Hylete LLC v. Hybrid Athletics, LLC*, 931 F.3d 1170, 1174 (Fed. Cir. 2019) (argument not raised waived and emphasizing that appellate courts generally "do not consider issues 'not passed upon below' or entertain arguments not presented to the lower tribunal" absent exceptional circumstances not present here).

In view of Savvy Dog's waiver, this Court should not even address the ordered combination argument on the merits.

37

**b.     Even if the Court considers the ordered combination argument, it fails to provide the requisite inventive concept.**

Even if the Court were to consider Savvy Dog's waived ordered combination argument, it fails on the merits for at least three reasons.

*First*, the only two steps Savvy Dog points to in support of its ordered combination are the testing and automatically displaying steps.  Savvy Dog Br. 33-34.  There is no dispute that the Prior Art Tic-Tac-Fruit game performed the testing step.  *See* Appx418 at 52:19-20 (Savvy Dog's counsel conceding that in Prior Art Tic-Tac-Fruit game "there was a testing step performed, and we're not going to run from that fact"); Appx1689 at 1 (Savvy Dog admits Nick Farley report is prior art to '223 Patent); Appx1485 (prior art Nick Farley report describing that Prior Art Tic-Tac-Fruit game discloses software algorithm performing testing, and "[t]he player is then presented with the puzzle to solve.").  Nor is there a dispute that prior art games automatically displayed a game field to the player.  Appx1689 ¶¶1-2, Appx1485 (prior art Nick Farley report describes the Prior Art Tic-Tac-Fruit game displaying a "video screen [that] presents nine symbols in a 3x3 array to the player, similar to a t[i]c-tac-toe arrangement").  As such, the only arguable difference between the '223 Patent game steps and the prior art is just the reordering of the display step so the game field is shown to a player prior to activation of a game, not after.

38

This Court has held that merely reordering known steps of game play cannot be the inventive concept.  In *Solutran, Inc. v. Elavon, Inc.*, this Court considered claims similar to the ones at issue here.  931 F.3d 1161, 1169 (Fed. Cir. 2019).  As is the case here, each individual step in *Solutran* was known and conventional, but the alleged inventive concept was "[r]eordering the steps so that account crediting occurs before check scanning (as opposed to the other way around)." *Id.*  This Court held that this new reordering "represents the abstract idea in the claim, making it insufficient to constitute an inventive concept." *Id.*  The Court continued, "[t]o the extent Solutran argues that these claims are patent-eligible because they are allegedly novel and non-obvious, we have previously explained that merely reciting an abstract idea by itself in a claim—even if the idea is novel and non-obvious—is not enough to save it from ineligibility." *Id.*

As in *Solutran*, here, the reordering of when a step occurs (i.e., the display of the game field), even if novel, represents the abstract idea of the rules of the game in the claims.  As mentioned above and recognized in *Solutran*, the abstract idea cannot be the inventive concept that passes *Alice* Step 2 muster.  *See id.*; *Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1315 (Fed. Cir. 2016) ("'[N]ovelty' of any element or steps in a process, or even of the process itself, is of **no relevance** in determining whether the subject matter of a claim falls within the § 101 categories of possibly patentable subject matter."); Section II.B.3, *supra*.

*Second*, Savvy Dog's argument is illogical in view of its admission that other claims that recite the exact specific ordered combination of steps as claim 44 (but without a processor) lack an inventive concept. *See* Appx406-407 at 40:21-41:1(Savvy Dog counsel states that "step two analysis only needs to be performed with respect to . . . claims that recite the game processor 'configured for' language."). If so, then the ordered combination cannot be the inventive concept.

*Third*, this Court's caselaw suggests that an ordered combination provides an inventive concept when it recites a technology-specific solution to a technology-specific problem. *See, e.g.*, *Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1351 (Fed. Cir. 2016) (finding ordered combination supplied inventive concept where it recited "a technology-based solution . . . that overcomes existing problems" specific to the computer technology at issue). Conversely, this Court has found no inventive concept in claims that "do not improve the function of the computer" itself. *Return Mail, Inc. v. United States Postal Serv.*, 868 F.3d 1350, 1369 (Fed. Cir. 2017), *rev'd and remanded on other grounds*, 139 S. Ct. 1853 (2019). As discussed above, the claims do not recite a technological solution to a technological problem. *See* Section II.B.2, *supra.*

**C.    Savvy Dog's preemption arguments cannot save the claims.**

Finally, Savvy Dog imputes error to the district court's analysis because the district court did not make a finding that the claims "preempt[] all skill-based electronic gaming enabled by processor rules." Savvy Dog Br. 31. But such a finding was not required.

This Court has "consistently held that claims that are otherwise directed to patent-ineligible subject matter cannot be saved by arguing the absence of complete preemption." *Return Mail*, 868 F.3d at 1370 (citing various cases). "While preemption may signal patent ineligible subject matter, the absence of complete preemption does not demonstrate patent eligibility." *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015).

Therefore, the fact the claims may not entirely preempt "all skill-based electronic gaming enabled by processor rules," Savvy Dog Br. 31, is no reason to hold the claims patent eligible.

*            *            *

The district court's Section 101 analysis is grounded in the patent claims and correctly applies the relevant law. Savvy Dog's arguments, on the other hand, are based on a misreading of the patent claims and the relevant law. The district court's determination that the '223 Patent does not claim patent-eligible subject matter should be affirmed.

41

### III. "An Actual Game To Be Played" Means "The Constructed Game Field Of The Game To Be Played."

The Court need not reach the claim construction issue, which relates to Savvy Dog's noninfringement case, if it affirms the district court's patent ineligibility ruling. However, if the Court does reach this issue, it should affirm the district court's claim construction of "actual game to be played." Appx84-85.

Savvy Dog accuses PA Coin of infringing claims 44, 47, 49-51, 54, and 56 of the '223 Patent. Appx2114. Savvy Dog has stipulated that it cannot prove infringement of the asserted claims under the district court's construction of "actual game to be played." Appx2092-2095; Appx95; Appx99. Its infringement theory depends on a construction that is broad enough to cover games that do **not** preview a game field to a player. Appx319-320.

Savvy Dog thus asks this Court to construe the term to mean "the game to be played, including an otherwise unknown system-generated attribute of it." Savvy Dog Br. 2, 40; Appx83. This term would encompass game systems that only preview minimal information about a game (such as a potential payout amount) that would **not** increase player skill—i.e., would not impact whether the "outcome of play during the game [would] be controlled by the person playing the game." Appx133 at 1:24-27; Savvy Dog. Br. 4. This is an inconsistent position for Savvy Dog, considering that, when arguing to this Court regarding the patent eligibility of its

42

claims, Savvy Dog touted the imported patented "improvement" of "enabling a specific type of **skill**-based game." Savvy Dog Br. 17.

As is explained herein, in view of the claims, the specification, and the prosecution history, the district court's construction is correct.

**A.      The district court's construction is supported by the plain language of the claims.**

Every claim construction inquiry begins with the language of the claims. *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed. Cir. 1996); *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc).

Here, all independent claims, including claims 44 and 51, recite a near-identical sequence of related steps (that is, the above-discussed game rules). As construed, those steps are:[3]

> constructing a field having a plurality of elements for the interactive game display wherein each element includes a game symbol from a plurality of predetermined game symbols;
>
> [establishing or ascertaining at least one winning combination [an array of game symbols in the game field yielding a successful outcome] for each game to be played];
>
> [testing the game field before making visible on the touch screen display the actual game to be played to the player to ensure that a winning combination more valuable than the determined winning combination is not generated inadvertently when the player completes

---

[3] Brackets indicate language imported from the district court's undisputed constructions of "prior to displaying," "winning combination," the "determining" step, and the "testing" step.  Appx93-94.

a winning combination [an array of game symbols in the game field yielding a successful outcome] for each play of the game]

**automatically displaying an actual game to be played** on the touch screen game display to a player prior to initiating activation of game play;

determining if the player has decided to play the displayed game; and

displaying an outcome resulting from play of the displayed game.

Appx140-141. The claims therefore require: First, that the game field with game symbols is constructed. Second, that a winning combination of game symbols for the game field is determined. Third, that the game field is tested to ensure that, when the player plays the game by completing the game field on the interactive game display, the player does not generate an array of game symbols more valuable than the selected winning combination. Fourth, that the "actual game to be played" is automatically previewed to the player. Fifth, that it is determined whether the player decides to play the displayed game. And sixth, that the outcome of the player completing the game field is displayed.

Just based on the claims, the most natural reading of the preview limitation (i.e., the "automatically displaying . . . step") is that the player is presented with a game field of symbols for the player to actually play on the touch screen. This context shows that "an actual game to be played" is the constructed game field to be played by the player, as the district court correctly held.

44

The dependent claims provide additional support for this natural reading.  For example, claim 45 refers to displaying an "**additional game field**" along with the "displayed game":

> 45. The electronic gaming system of claim 44 further comprising a component for **generating and displaying** an **additional game field** simultaneously on the game display in proximity to **the displayed game**.

Appx141 (emphasis added).  The only possible antecedent basis for the "displayed game" is the displayed "actual game to be played" recited in claim 44.  Thus, claim 45's reference to a displayed "**additional** game field" only makes sense if the "actual game to be played" constitutes a **first** displayed game field, because claim 44 recites no other displayed game field.

While the claim language supports the district court's construction, it does not support Savvy Dog's strained and confusing proposed construction.[4]  Savvy Dog argues "actual game to be played" need only be "an attribute" of a particular "game to be played"—such as the amount of a possible winning payout.  Savvy Dog Br. 43.  But Savvy Dog points to no record support that its proposed construction is the "plain meaning" of the term, or that a skilled artisan would understand the term to have this meaning.  Instead, Savvy Dog supports its argument by pointing to an

---

[4] As the district court correctly recognized, Savvy Dog's proposed construction is not helpful in explaining the meaning of the term.  Appx85 n.7 ("It is hard to imagine a juror being aided" by Savvy Dog's proposal.).

overgeneralized and liberally ellipted quote of claim 44. *See* Savvy Dog Br. 42 (characterizing claim 44 as requiring "a game processor for generating an interactive electronic game . . . [from] plurality of elements . . . [including] a plurality of predetermined game symbols . . . prior to displaying the game to the player"). Not only does this language not support Savvy Dog's construction, it omits most of the claim language as construed, including the requirement that a game field be constructed first, and that a player complete a winning combination of symbols in the game field. Appx140-141. It also ignores the claim language that the "actual game" is "to be played" by the player. Logically, a mere attribute of a game field— such as a payout—may not be something actually played by the player.

In short, the claim language supports the district court's construction.

**B.    The district court's construction is supported by the specification.**

Courts next turn to the specification to determine the meaning of claim terms. *See, e.g.*, *Bd. of Regents of the U. of Tex. Sys. v. BENQ Am. Corp.*, 533 F.3d 1362, 1368 (Fed. Cir. 2008). But the term "actual game to be played" is not mentioned in the specification. It was added during prosecution by amendment. Therefore, the district court rightly noted that "while the court can review the specification for context, it cannot derive the meaning of this term therefrom." Appx84.

The specification's context nonetheless supports the district court's construction. Every time the specification discusses displaying a game to a player,

it discloses showing a constructed game field of symbols. Not one embodiment describes previewing a game to a player that is not a constructed game field of symbols. For example, the abstract explains that the alleged invention is directed to "[a] field of game symbols [] presented on the game display to the player as a preview for deciding whether or not to play the displayed game. . . . A new game field can then be constructed and previewed on the game display." Appx123. Similar language is found in the specification's "Summary of the Invention." *See* Appx133 at 2:17-27 ("The field of game symbols is presented on the game display to the player as a preview for deciding whether or not to play the displayed game . . . . Each winning combination of symbols on the field could then be constructed and presented on the game display."). Figure 6's first three steps reinforce that the game displayed to the player is a game field:



Appx130. Figure 8 contains the same first three steps as Figure 6. Appx132 at 800, 802, 804. The descriptions of both Figure 6 and 8 state that the "game displayed" is

a game "field."  Appx137 at 10:37-38 ("The field is presented to the player on the game display as a preview of the game in step 602."); Appx138 at 11:65-12:2 ("The field is . . . displayed to the player on the game displayed.").

The specification thus provides the context of the invention and supports the district court's construction that an "actual game to be played" is a constructed game field.

## C.    The prosecution history, which should be given "substantial weight" here, confirms the district court's construction.

"With the background provided by the claims and the specification, we [next] examine the patent's prosecution history."  *BENQ*, 533 F.3d at 1369.  And "the prosecution history may be given substantial weight in construing a term where that term was added by amendment."  *Id.* (citing *Jansen v. Rexall Sundown, Inc.*, 342 F.3d 1329, 1333 (Fed. Cir. 2003) ("In this case, the [claim phrases at issue] were added to gain allowance of the claims. . . .  We must therefore give them weight, for the patentability of the claims hinged upon their presence in the claim language.")).

Even where "prosecution history statements do not rise to the level of unmistakable disavowal, they do inform the claim construction."  *Shire Dev., LLC v. Watson Pharm., Inc.*, 787 F.3d 1359, 1366 (Fed. Cir. 2015).  Indeed, in *Iridescent Networks, Inc. v. AT&T Mobility, LLC*, the district court relied heavily on a patentee's statements during prosecution of a parent application to construe a term.  933 F.3d 1345, 1349-50 (Fed. Cir. 2019).  On appeal, the patentee contended that

48

"the prosecution history is irrelevant to the claim construction question because there is no clear and unmistakable disavowal of claim scope." *Id*. at 1352. This Court rejected this argument, stating, "any explanation, elaboration, or qualification presented by the inventor during patent examination is relevant, for the role of claim construction is to capture the scope of the actual invention that is disclosed, described, and patented." *Id*. at 1352-53. And this Court explicitly stated that courts "may look to the prosecution history for guidance without having to first find a clear and unmistakable disavowal" for terms which do not have ordinary and customary meaning. *Id.* at 1353.

Here, the first two limitations of proposed claim 1 were first amended during prosecution as follows:

1.   (currently amended) An electronic gaming method comprising the steps of:

   constructing a <u>game</u> field having a plurality of elements for <u>an interactive touch screen</u> game display <u>on an electronic game terminal</u> wherein each element is filled by a game symbol for a plurality of ~~available~~ <u>predetermined</u> game symbols, wherein the game symbols for each element are automatically determined <u>for each play of the game</u> such

49

> that there is no winning combination without player
> interaction <u>with the game display;</u>
>
> presenting the field of game symbols on the <u>touch screen</u> game
> display <u>prior to activation of game play</u> as a preview to a
> player for deciding whether to play the displayed game
>
> . . .

Appx855 (amendments underlined; emphasis in original); *see also* Appx867.  In its remarks, the applicant explained that its amendment to the "presenting the field of game symbols" limitation meant "**the actual game that the player would play** is displayed before the player makes any commitment to playing the game."  Appx877.  This alone would be powerful evidence that "actual game to be played" means a constructed game field of game symbols.

But there is so much more.  In a later amendment, the patentee changed the "presenting the field of game symbols" limitation to read "automatically **displaying the game field** on the touch screen game display to a player prior to initiating activation of game play" in all independent claims.  Appx906-928 (emphasis added).  The patentee then doubled down and explained that "[t]his recitation clarifies that **the actual game to be played (i.e., the game field constructed in the first recited step)** is automatically displayed to the player in order for the player to decide whether to initiate play of the game displayed."  Appx931; *see also id.* (patentee

50

explaining "[w]hen the player hits the Play button, he is initiating **play of the actual game field that is displayed**.  Thus, the player can study the game field carefully to determine the optimum location of the wild symbol before he makes any commitment to **play the game**." (emphasis added)).   Through an examiner amendment, the examiner then substituted the patentee's "actual game to be played" language for "the game field" in the "automatically displaying" step in each independent claim, and allowed the claims.  *See* Appx959-960; Appx964-965.

Given the term was added by amendment, "the prosecution history may be given substantial weight in construing" an actual game to be played.  *BENQ*, 533 F.3d at 1369.  The aforementioned prosecution history strongly weighs in favor of construing an actual game to be played as "the game field constructed."  Appx931.

Savvy Dog does not directly challenge the district court's treatment of the prosecution history.  Instead, it responds to a strawman argument, claiming "[t]he only support in the intrinsic evidence . . . fails to meet the exacting standards for lexicography or disclaimer."  Savvy Dog Br. 41; *see also id.* at 47 (alleging district court found lexicography).   Although the district court could have relied on lexicography or disclaimer here—since this Court has frequently recognized that "i.e." "signals an intent to define," *Edwards Lifesciences LLC v. Cook Inc.*, 582 F.3d 1322, 1334 (Fed. Cir. 2009)—it did not.  Instead, it just found "the use of 'i.e.' within the prosecution history to be instructive here" while considering all the intrinsic

evidence. Appx85. Therefore, Savvy Dog's reliance on *Pfizer, Inc. v. Teva Pharmaceuticals, USA, Inc.*, 429 F.3d 1364, 1373 (Fed. Cir. 2005), *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1326 (Fed. Cir. 2012), *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1370 (Fed. Cir. 2012), and *Braintree Labs., Inc. v. Novel Labs., Inc.*, 749 F.3d 1349, 1355 (Fed. Cir. 2014) is misplaced. Savvy Dog Br. 50-51.

Those cases are distinguishable in any event. In *Pfizer* this Court declined to hold that "i.e." was definitional where the specification was full of statements that supported a broader construction and there was evidence a skilled artisan would not read the term narrowly. 429 F.3d at 1373. By contrast, nowhere in the entire '223 Patent specification is there a single example of a game played that is not a constructed game field of game symbols.

As this Court explained in *SkinMedica, Inc. v. Histogen Inc.*, 727 F.3d 1187, 1201-02 (Fed. Cir. 2013), the Court in *Dealertrack* declined to read "i.e." as meaning an intent to define "because doing so would exclude multiple embodiments **clearly discussed throughout the claims**." (emphasis added). As is explained in Section III.E, *infra*, that is not the case for the two specific embodiments Savvy Dog identifies. Rather, every embodiment in the specification discloses a preview of a game field of game symbols.

*Toshiba Corp.*, 681 F.3d at 1370-71, addressed a disclaimer argument made by the dissent that was not presented by either party nor adopted by the district. In

52

*Toshiba* this Court declined to hold that "i.e." amounted to disclaimer where "the examiner's statement of reasons for allowance shows that the examiner did not interpret this statement as limiting." 681 F.3d at 1370-71. There is no such examiner statement here. If anything, the examiner's injection of the patentee's own language into the claims of the '223 Patent in response to patentee's arguments indicates the examiner understood "actual game to be played" to be the constructed game field of game symbols displayed to a player, consistent with the district court's construction.

And in *Braintree*, this Court declined to interpret the patentee's use of "i.e." in a patent term extension request as redefining a claimed term that would be inconsistent with the stated goal of the claims. 749 F.3d at 1354-55. Here, it is Savvy Dog's broad proposed construction—which would encompass mere display of potential payouts—that would be inconsistent with the patent's goal of reducing the role of chance and increasing the role of player skill in completing a game. Appx133 at 1:23-32; Appx134 at 3:15-17, 3:61-63; Appx190 at 27:1-16; Appx196 at 33:12-18 (Savvy Dog counsel states claim 44 is directed to system that elevates game "from a game of chance more towards a game of skill"); Appx428-429 at 62:20-63:6 (Savvy Dog counsel admits reason for invention is elevation of skill and reduction of chance).

Finally, Savvy Dog argues that the "i.e." use in the prosecution history is irrelevant because it "relat[ed] to a totally different claim term." Savvy Dog Br. 41.

53

Indeed, Savvy Dog goes so far as to characterize the prosecution history's use of the same "actual game to be played" language a "coincidence." *Id.* at 48. First, it is no "coincidence." The examiner amended the claims to substitute "actual game to be played" for "the game field" only after the applicant connected the two. *See, e.g.*, Appx906; Appx931; Appx960. Second, Savvy Dog has not cited to a single case that suggests that looking at pending claim language matters to the analysis. Indeed, *Iridescent Networks* relied on language for a parent application, further separated from the pending claims. *See* 933 F.3d at 1350 ("Statements made during prosecution of a parent application are relevant to construing terms in a patent resulting from a continuation application if such statements relate to the subject matter of the claims being construed.").

Just as in *Iridescent Networks*, the statements made in the prosecution history are informative as to the meaning of "an actual game to be played" and should be given heavy weight. Savvy Dog is therefore wrong to assert that the "i.e." "passage is largely irrelevant to the claim construction analysis." Savvy Dog Br. 49. Savvy Dog has shown no error in the district court's proper consideration of the prosecution history, which heavily supports the district court's construction.

**D.    The doctrine of claim differentiation cannot support a different construction.**

Savvy Dog argues that since "actual game to be played" and "game field" appear separately in claim 44 (and independent claim 51 as well), under the doctrine of claim differentiation the patentee enjoys a presumption that different words have different meanings and scope.   Savvy Dog Br. 43-44.   But this argument is inapplicable to Savvy Dog's claims for four reasons.

First, the doctrine of claim differentiation embodies the notion that language in one claim should not be interpreted to make another claim, often a dependent claim, superfluous.   *See, e.g.*, *Transmatic, Inc. v. Gulton Indus., Inc.*, 53 F.3d 1270, 1277 (Fed. Cir. 1995).   It is not applicable to terms within the same claim.

Second, if Savvy Dog is somehow trying to invoke the principle that all claim terms are generally presumed to have meaning in a claim, *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1119 (Fed. Cir. 2004), the district court's construction does not offend this principle.   In the claims, there is a distinction between the specific "actual game to be played" and the more general game field.   After being constructed in the first step, every game field is tested in the "testing" step.   A game field that has passed the test is an "**actual** game **to be played**"—that is, the "constructed game field **of the game to be played**."   Put differently, while every "actual game to be played" is a constructed game field, not every constructed game field passes the test to become an "actual game to be

55

played." It makes sense that the claims use different words to describe these things of slightly different scope.

Third, even assuming claim differentiation could apply to differentiate two terms in the same claim, it "only creates a presumption that each claim in a patent has a different scope; it is not a hard and fast rule of construction." *Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1369 (Fed. Cir. 2005); *see also Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1370 (Fed. Cir. 2007) (declining to rely on doctrine of claim differentiation to interpret two words differently because inference is "plausible one in the absence of evidence to the contrary, but here there is powerful evidence to the contrary").

Here, even if the Court agrees that "game field" and "actual game to be played" mean the same thing under the district court's construction, that should not lead to adopting Savvy Dog's construction. Savvy Dog cannot use the doctrine of claim differentiation to improperly broaden its claims in a way not otherwise supported by the intrinsic record. *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1480 (Fed. Cir. 1998) ("[T]he doctrine of claim differentiation can not broaden claims beyond their correct scope, determined in light of the specification and the prosecution history and any relevant extrinsic evidence . . . . [C]laims that are written in different words may ultimately cover substantially the same subject matter."); *Andersen*, 474 F.3d at 1370.

56

Fourth, "[t]here is no reason to apply the doctrine of claim differentiation, []
where, as here, the district court's construction does not render any claim redundant
or superfluous." *In re Rembrandt Techs., LP*, 496 F. App'x 36, 45-46 (Fed. Cir.
2012) (citing *Andersen Corp.*, 474 F.3d at 1370). Savvy Dog relies on the doctrine
of claim differentiation but provides no explanation as to how the district court's
construction runs afoul of the doctrine in a way that is problematic. Indeed, no step
is read out of the claims under the district court's construction. This is another
reason why Savvy Dog's claim differentiation argument is unpersuasive.

### E.     The district court's construction does not improperly exclude preferred embodiments.

Savvy Dog is left with one final argument: the district court's claim
construction allegedly excludes disclosed embodiments. Savvy Dog Br. 44. As an
initial matter, even if accurate, that alone is not a reason to reject the construction.
There is no requirement that every claim be construed in a way to cover every
disclosed embodiment in the specification. As this Court made clear,

> to construe the claim term to encompass the alternative embodiment . . .
> would contradict the language of the claims. Indeed, read in the context
> of the specification, the claims of the patent need not encompass all
> disclosed embodiments. Our precedent is replete with examples of
> subject matter that is included in the specification, but is not claimed.
> Therefore, the mere fact that there is an alternative embodiment
> disclosed in the '828 patent that is not encompassed by district court's
> claim construction does not outweigh the language of the claim,
> especially when the court's construction is supported by the intrinsic
> evidence.

57

*TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.*, 529 F.3d 1364, 1373 (Fed. Cir. 2008) (citations omitted).

Further, the asserted claims were undisputedly not written to cover all disclosed embodiments. As Savvy Dog states in its brief, the claims' recital of the unchallenged "determining at least one winning combination . . ." limitation requires there be a winning outcome for each play of the game. Savvy Dog Br. 45 (stating "each game has a winning outcome" and citing to claim 44). But the specification explicitly discloses embodiments where there is no winning outcome at all and where the electronic game discloses a previewed game outcome comprised of a non-winning combination of symbols. Appx138 at 11:20-23 ("In this case, the preview screen could actually be the results screen displaying the game outcome. **Such a preview screen could display** a winning or **a non-winning combination**"); *id.* at 11:44-51. Regardless of how this Court construes "an actual game to be played," the claims will not cover these embodiments without a winning combination. *See Apple Inc. v. Andrea Elecs. Corp.*, 949 F.3d 697, 708 (Fed. Cir. 2020) ("[When] the patent describes multiple embodiments, every claim does not need to cover every embodiment. This is particularly true [when] the plain language of a limitation of the claim does not appear to cover that embodiment." (citation omitted)).

58

In any event, the two specific examples of alleged unclaimed embodiments that Savvy Dog provides do not support a different construction of "actual game to be played."

First, Savvy Dog alleges there is a disclosed embodiment where the preview screen does not show a constructed game field of symbols. Savvy Dog Br. 45. Not so. Savvy Dog cites the sentence "[t]he displayed game could actually be the result which may or may not be a winning combination of symbols." *Id.* (citing Appx138 at 11:48-49). Under Savvy Dog's interpretation, this passage discloses the alternatives of either a result (a) that is a combination of symbols or (b) that is not a combination of symbols (like a maximum award that could be won). Savvy Dog Br. 45. But such an interpretation reads out the word "winning." The most natural reading of this sentence, in view of the word "winning," is that the result is either a winning combination of symbols, or a non-winning combination of symbols—but always a field comprised of game symbols. Further, as discussed above, even if the embodiment at 11:48-49 were read to not require a winning combination as Savvy Dog proposes, it would still not be covered by claim 44 which requires a winning combination.

Savvy Dog's interpretation of this embodiment is also not supported by its context. The sentence before 11:48-49 in the specification recognizes that the preview display "could be used in the context of an electronic or electromechanical

59

slot machine having a plurality of spinning reels (actual or simulated) **and displaying one or more lines of symbols**." Appx138 at 11:45-48. The sentence after states "[t]he player would play **the displayed game**, knowing its result, in order to preview the next game." *Id.* at 11:50-51. Therefore, the surrounding language discusses displaying a field with symbols to be played by the player, which contradicts an interpretation of this embodiment that is divorced from a game field.

Second, Savvy Dog identifies an embodiment (that it failed to address below at the district court) allegedly not covered under the district court's construction:

> The preview screen could also be implemented in an electronic game having a plurality of reels, each reel having a plurality of symbols, and a nudge feature and/or wild symbol. The game display could have a next game preview positioned in a space adjacent or in proximity to the main game display. A nudge game is one in which the player has an option to nudge one of the reels up or down one or more positions after the reels stop spinning in order to achieve a winning combination, usually along a pay line associated with the plurality of reels.

Savvy Dog Br. 46 (citing Appx138 at 11:43-60, but the quotation is from Appx138 at 11:51-60). Savvy Dog characterizes this paragraph in the specification as describing a game where the player views an incomplete game field and then manipulates the field to move **unknown** symbols from a non-displayed portion of a game field to make a winning combination. Savvy Dog Br. 46 ("Nudging a reel down by one position, for example, would reveal a previously unknown symbol that was above the previewed matrix."). But that is not what the specification says; rather, this paragraph discloses nudging a reel "to achieve a winning combination,

usually along a pay line," which is something that the player can see (like in depicted embodiments, such as Fig. 1B).  Appx138 at 11:56-60.  The specification does not state any symbol is unknown, and this nudge embodiment (which, like the district court's construction, displays a constructed game field) can be fully practiced without any unknown symbols.[5]

*    *    *

The district court's claim construction finds ample support in the claims, the specification, and the prosecution history.  Savvy Dog's proposed construction, on the other hand, is unsupported.  Its arguments to the contrary are unconvincing.  The district court's claim construction of "an actual game to be played" should be affirmed.

---

[5] To the extent this embodiment could theoretically be practiced with unknown symbols, that would not weigh against the district court's claim construction.  *See, e.g.*, *Pacing Techs., LLC v. Garmin Int'l, Inc.*, 778 F.3d 1021, 1026 (Fed. Cir. 2015) (undisclosed embodiment argument unpersuasive at claim construction where "it is not clear that our construction excludes this embodiment," "our construction requires the repetitive motion pacing system to produce a sensible tempo, but it does not exclude additional features," and "[j]ust because an embodiment does not expressly disclose a feature does not mean that embodiment excludes that feature").

## CONCLUSION & PRAYER FOR RELIEF

The district court properly held that the claims of the '223 Patent are ineligible. Further, if it reaches the claim construction issue, the district court properly construed "an actual game to be played." For the foregoing reasons, this Court should affirm the judgement below.

Dated: April 5, 2023

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By:　*/s/ John V. Gorman*

MORGAN, LEWIS & BOCKIUS LLP
Amy M. Dudash
1201 N. Market Street, Suite 2201
Wilmington, DE 19801
(302) 574-7293

MORGAN, LEWIS & BOCKIUS LLP
John V. Gorman
Julie S. Goldemberg
1701 Market Street
Philadelphia, PA 19103
(215) 963-5000

***Counsel for Appellees***
***Pennsylvania Coin, LLC and PA Coin Holdings, LLC***

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

1.      This brief complies with the type-volume limitations of Federal Circuit Rule 32(b)(1) because this brief contains 13,739 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2).

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 MSO in Times New Roman 14-point font.

*/s/ John V. Gorman*
John V. Gorman
*Counsel for Appellees Pennsylvania Coin, LLC and PA Coin Holdings, LLC*

Dated: April 5, 2023

63