**2023-1073**

# United States Court of Appeals for the Federal Circuit

SAVVY DOG SYSTEMS, LLC, POM OF PENNSYLVANIA, LLC,

*Plaintiffs-Appellants,*

– v. –

PENNSYLVANIA COIN, LLC, PA COIN HOLDINGS, LLC,

*Defendants-Appellees.*

*Appeal from the United States District Court for the Middle District of Pennsylvania in No. 3:19-CV-01470-JPW Honorable Jennifer P. Wilson*

## APPELLANTS' REPLY BRIEF

STEVEN G. HILL
DAVID K. LUDWIG
HILL, KERTSCHER & WHARTON LLP
3625 Cumberland Boulevard, SE,
  Suite 1050
Atlanta, Georgia  30339
(770) 953-0995
sgh@hkw-law.com
dludwig@hkw-law.com

*Counsel for Appellants*

MAY 9, 2023

CP COUNSEL PRESS, LLC                                              (888) 277-3259

# CERTIFICATE OF INTEREST

Counsel for Appellants Savvy Dog Systems, LLC and POM of

Pennsylvania, LLC certifies the following:

1.  The full name of every party I represent is:  Savvy Dog Systems, LLC and POM of Pennsylvania, LLC

2.  The name of the real party in interest (if the party named in the caption is not the real party in interest) I represent is:  N/A

3.  All parent corporations and any publicly held companies that own 10% or more of the stock of the party I represent are:  N/A

4.  The names of all law firms and the partners and associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear for the party in this court (and who have not or will not enter an appearance in this case) are:

    **Hill, Kertscher & Wharton, LLP:** John North, Martha Decker (no longer with the firm)

    **Kleinbard LLC:** Matthew Haverstick, Eric J. Schreiner, Paul Gagne, Shohin Vance, James Gorman III

5.  The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal are as follows:

    *Savvy Dog Systems, LLC v. Pennsylvania Coin, LLC*, No 5:21-mc-00021-BM (E.D.N.C.)

6.  All information required by Federal Rule of Appellate Procedure 26.1(b) and (c):  N/A

Dated:  May 9, 2023

*/s/ Steven G. Hill*
Steven G. Hill

i

**TABLE OF CONTENTS**

CERTIFICATE OF INTEREST ..................................................................i

TABLE OF CONTENTS ....................................................................... ii

TABLE OF AUTHORITIES ..................................................................iv

INTRODUCTION .................................................................................1

ARGUMENT .........................................................................................2

    I.    *ALICE* STEP ONE: THE CLAIMS ARE NOT DIRECTED TO
        AN ABSTRACT IDEA ................................................................2

        A.    This Court Has Repeatedly Rejected Appellees'
              Argument that Only Computer Technology Relating to
              Hardware Is Patent-Eligible .....................................................2

              1.    Appellees' Cited Cases Are Inapposite ...........................4

              2.    Appellees Fail to Distinguish Appellants' Cited
                    Cases ...............................................................................8

        B.    Patent-Eligibility Does Not Turn on Whether a Human
              Could Theoretically Engage in Analogous Activity
              Without a Computer ...............................................................11

    II.    *ALICE* STEP TWO: THE CLAIMS RECITE AN INVENTIVE
        CONCEPT ................................................................................14

        A.    The Claimed Processor Steps Are Not Game Rules ................14

        B.    The 223 Patent Solves a Technical Problem, Not Just a
              Legal Problem ........................................................................16

        C.    Appellants Did Not Waive Arguments or Admit Any
              Claims Lack an Inventive Concept ..........................................17

D. The Ordered Combination of Processor Steps Can and Does Constitute an Inventive Concept ........................................ 18

III. "AN ACTUAL GAME TO BE PLAYED" MEANS "THE GAME TO BE PLAYED, INCLUDING AN OTHERWISE UNKNOWN SYSTEM-GENERATED ATTRIBUTE OF IT." .......... 20

A. The Claim Language Suggests a Meaning of "Actual Game to Be Played" Broader than "Constructed Game Field." ...................................................................................... 20

B. The 223 Patent's Disclosure Contemplates that the Previewed Game Does Not Require the Constructed Game Field ................................................................................ 22

C. The District Court's Construction Improperly Excludes Preferred Embodiments ........................................................... 25

D. Appellees' Cited Prosecution History Is Irrelevant to Understanding "Actual Game to Be Played." ........................... 29

CONCLUSION ................................................................................................ 31

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**CASES**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
    573 U.S. 208 (2014)...............................................................................*passim*

*Apple Inc. v. Andrea Elecs. Corp.,*
    949 F.3d 697 (Fed. Cir. 2020)...................................................28, 29

*Bd. of Regents of the Univ. of Texas Sys. v. BENQ Am. Corp.,*
    533 F.3d 1362 (Fed. Cir. 2008)...............................................................20

*Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP,*
    616 F.3d 1249 (Fed. Cir. 2010)...............................................................21

*Bilski v. Kappos,*
    561 U.S. 593 (2010).......................................................................................3

*CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG,*
    224 F.3d 1308 (Fed. Cir. 2000).................................................................21

*ChargePoint, Inc. v. SemaConnect, Inc.,*
    920 F.3d 759 (Fed. Cir. 2019)....................................................................5

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.,*
    880 F.3d 1356 (Fed. Cir. 2018)..................................................................5

*cxLoyalty, Inc. v. Maritz Holdings Inc.,*
    986 F.3d 1367 (Fed. Cir. 2021).......................................................5, 16, 17

*CyberSource Corp. v. Retail Decisions, Inc.,*
    654 F.3d 1366 (Fed. Cir. 2011) ............................................................. 5-6

*Data Engine Techs. LLC v. Google LLC,*
    906 F.3d 999 (Fed. Cir. 2018).......................................................1, 3, 10, 11

*DDR Holdings, LLC v. Hotels.com, L.P.,*
    773 F.3d 1245 (Fed. Cir. 2014).....................................................1, 3, 9, 10

*Enfish, LLC v. Microsoft Corp.*,
 822 F.3d 1327 (Fed. Cir. 2016)................................................................1, 3, 10

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
 839 F.3d 1089 (Fed. Cir. 2016)....................................................................6, 7

*Hill-Rom Servs., Inc. v. Matal*,
 716 F. App'x 996 (Fed. Cir. 2017).................................................................20

*In re Marco Guldenaar Holdings B.V.*,
 911 F.3d 1157 (Fed. Cir. 2018).................................................................5, 15

*In re Smith*,
 815 F.3d 816 (Fed. Cir. 2016)..............................................................4, 5, 15

*Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*,
 50 F.4th 1371 (Fed. Cir. 2022).........................................................................7

*Iridescent Networks, Inc. v. AT&T Mobility, LLC*,
 933 F.3d 1345 (Fed. Cir. 2019).......................................................................29

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
 566 U.S. 66 (2012)............................................................................................19

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
 837 F.3d 1299 (Fed. Cir. 2016)................................................................*passim*

*Nobel Biocare Servs. AG v. Instradent USA, Inc.*,
 903 F.3d 1365 (Fed. Cir. 2018), *as amended* (Sept. 20, 2018)................ 28-29

*Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.*,
 520 F.3d 1358 (Fed. Cir. 2008).....................................................................16

*Pacing Techs., LLC v. Garmin Int'l, Inc.*,
 778 F.3d 1021 (Fed. Cir. 2015).....................................................................28

*PersonalWeb Techs. LLC v. Google LLC*,
 8 F.4th 1310 (Fed. Cir. 2021)...........................................................................5

v

*Planet Bingo, LLC v. VKGS LLC*,
       576 F. App'x 1005 (Fed. Cir. 2014)...........................................................4, 5

*Solutran, Inc. v. Elavon, Inc.*,
       931 F.3d 1161 (Fed. Cir. 2019).....................................................................19

**STATUTE**

35 U.S.C. § 101 ....................................................................................................6

**INTRODUCTION**

Appellees' brief fails to rebut Appellants' arguments with respect to both patent-eligibility and claim construction.  It relies on easily-distinguishable case law, baselessly accuses Appellants of waiving or conceding arguments, and offers merely token attempts to distinguish Appellants' key cases.

Regarding *Alice* step one, the instant case lines up with this Court's *Data Engine*, *McRO*, *DDR Holdings*, and *Enfish* cases, in which software innovations expanding computer functionality were deemed patent-eligible.  Regarding *Alice* step two, Appellees' expert admitted that the claimed limitations were not routine or conventional.  Unlike in Appellees' cited cases, the 223 Patent claims do not merely recite a well-known abstract idea run on a generic computer, but rather recite a series of specific, unconventional processor steps that enable specific new functionality.

Regarding claim construction, Appellees present no cogent reasoning supporting the district court's narrow construction of "an actual game to be played" as "the constructed game field of the game to be played."  That construction is based on an irrelevant passage from the prosecution history, which even Appellees' cases state the district court should not have considered in view of the term's plain meaning.  Moreover, Appellees' suggestion that the district court properly excluded preferred embodiments from the claim scope is based on cases

1

in which, unlike in the instant case, the claims clearly excluded those embodiments.

## ARGUMENT

**I.    *ALICE* STEP ONE: THE CLAIMS ARE NOT DIRECTED TO AN ABSTRACT IDEA.**

### A.    This Court Has Repeatedly Rejected Appellees' Argument that Only Computer Technology Relating to Hardware Is Patent-Eligible.

Appellees' central argument that the 223 Patent claims are directed to an abstract idea is that the claims do not recite novel hardware or an improvement in hardware operation. *See, e.g.*, Appellees' Brief, p. 23 ("[T]here is nothing novel about a generic computer. Nor does the specification suggest that the processor itself is improved from a technical perspective, or that it would operate differently than it otherwise could.") (internal quotations omitted); p. 25 ("[T]he claimed game can be implemented on existing, off-the shelf, prior art game processors."). Indeed, even Appellees' position that "[t]he claimed rules for playing a game can be carried out by humans," *id.* at 20, is a variant of this basic argument, as Appellees are attempting to distinguish between claims directed to novel machines and claims that, in theory at least, can be performed using human brains, human hands, or generic computer technology.

As Appellants explained, however, Appellees' premise is legally wrong. Opening Brief, pp. 21-32. There is no "bright-line machine-or-transformation test

2

or ... categorical ban on software patents." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1339 (Fed. Cir. 2016) (citing *Bilski v. Kappos*, 561 U.S. 593, 604 (2010)); *see also id.* ("We do not see in *Bilski* or *Alice*, or our cases, an exclusion to patenting" "improvements to software that, by their very nature, may not be defined by particular physical features but rather by logical structures and processes."). The dividing line between patent-eligibility and patent-ineligibility is not whether the claimed subject matter improves hardware technology, but rather whether it "provides a specific solution to then-existing technological problems." *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1008 (Fed. Cir. 2018). Appellants detailed four cases from this Court making this principle clear, each case holding that purely software innovations—without accompanying hardware improvements—were not directed to abstract ideas because the software innovations themselves constituted technological solutions to technological problems. *See* Opening Brief, pp. 24-28 (discussing *Data Engine*, *McRO*, *DDR Holdings*, and *Enfish*). The present case is analogous, as the inventor added technological functionality to gaming systems by developing and claiming a specific, counterintuitive processor algorithm. *Id.* at 27-28.[1]

---

[1] Appellants maintained throughout the case that the 223 Patent represents transformative, counterintuitive technology enabling electronic skill-based gaming. *See* Appx314-315 at 77:23-78:6; Appx449-451; Appx546; Appx1692 (statement of material fact no. 7 and response); Appx1744-1745 (¶¶42-43); Appx 1701-1702 (counterstatement of material fact no. 15); Appx1870 (¶334, Harrigan report).

To the extent Appellees dispute that the 223 Patent claims a technological solution to a technological problem, their disagreement is singularly focused on the lack of hardware innovation. They dispute, for example, that "prior art gaming terminals were not capable of performing this style of game [] at least not without substantial reconfiguration," Appellees's Brief, p. 24, even though their expert admitted that the claimed algorithm was not conventional in prior art gaming systems, *see* Opening Brief, p. 35, and there is no evidence that any prior art gaming systems were programmed with the claimed processor rules. Ultimately, Appellees cannot dispute that the claimed gaming system is uniquely programmed or that prior art gaming systems would need to be reprogrammed to practice the claims, and thus that the claimed system constitutes a technological advancement over the prior art. Such subject matter is patent eligible.

### 1. Appellees' Cited Cases Are Inapposite.

While Appellants' cited cases are directly analogous to the instant case and compel a finding of patent-eligibility, each of Appellees' cited cases are distinguishable. As Appellants already explained in their Opening Brief, for example, *In re Smith*, 815 F.3d 816 (Fed. Cir. 2016) and *Planet Bingo, LLC v. VKGS LLC*, 576 F. App'x 1005 (Fed. Cir. 2014) involved claims reciting **actual game rules for governing humans**, as opposed to a specific algorithm for a processor to run, enabling a fundamentally new type of game. *See* Opening Brief,

pp. 28-30.  The same distinction applies to *In re Marco Guldenaar Holdings B.V.*, 911 F.3d 1157 (Fed. Cir. 2018) (method of playing dice game invalid) (Appellees' Brief, pp. 20-21).  Of course, there is nothing technological about game rules, but programming electronic gaming devices to be able to play a new type of game is a technological achievement deserving of patent protection.  The inapplicability of *In re Smith*, *Planet Bingo*, and *In re Marco Guldenaar* is thus facially apparent, and Appellees do not even attempt to rebut Appellants' criticism of the district court's reliance on this line of cases.

Appellees' other cited cases also fall short of supporting their position.  The Court in *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1362 (Fed. Cir. 2018) (Appellees' Brief, pp. 21-22) found the challenged claims **not** to be directed to an abstract idea.  The *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 768-69 (Fed. Cir. 2019) (Appellees' Brief, pp. 23-24) Court focused specifically on "[t]he breadth of the claim language," finding that the claims "would preempt the use of any networked charging stations."  Appellees rely on *cxLoyalty, Inc. v. Maritz Holdings Inc.*, 986 F.3d 1367, 1380 (Fed. Cir. 2021) and *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1318 (Fed. Cir. 2021) only for the unremarkable and irrelevant proposition that novelty itself does not render a claim patent-eligible.  Appellees' Brief, p. 25.  And *CyberSource Corp. v. Retail*

5

*Decisions, Inc.*, 654 F.3d 1366 (Fed. Cir. 2011) (Appellees' Brief, pp. 20-21)

issued before *Alice* and thus does not reflect current Section 101 case law.

In fact, Appellees' cited case *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839

F.3d 1089 (Fed. Cir. 2016) (Appellees' Brief, pp. 24) actually supports **Appellants'**

position.  There, the Court distinguished the patent-ineligible claims from the

patent-eligible claims in *McRO* in a manner that underscores the applicability of

*McRO* here.  The challenged *FairWarning* claims were patent-ineligible, the Court

explained, because they "merely implement[ed] an old practice in a new

environment," finding that "humans in analogous situations detecting fraud [had

followed the same rules recited in the claims] for decades, if not centuries."  *Id.* at

1094-95.  Because the claimed rules were well-known in the prior art, it was the

claimed "incorporation of a computer, ***not*** the claimed rule, that purportedly

improve[d] the existing technological process by allowing the automation of

further tasks."  *Id.* (internal quotations omitted) (emphasis in original).  The claims

in *McRO*, by contrast, were patent eligible because the claimed processor rules

themselves provided a technological solution to a technological problem.  *Id.* at

1094 ("[W]e explained [in *McRO*] that 'it [was] the incorporation of the claimed

rules, not the use of the computer, that improved the existing technological process

by allowing the automation of further tasks.'") (quoting *McRO, Inc. v. Bandai*

*Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016)) (internal quotations

omitted).  As in *McRO* and decisively **not** in *FairWarning*, the claims of the 223

Patent undisputedly recite novel processor rules that enable new and improved

device functions.

Finally, the *Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371

(Fed. Cir. 2022) case Appellees discuss on pages 26-27 of their brief is

distinguishable for essentially the same reasons the *FairWarning* case is.  In *Int'l

Bus. Machines*, one of the two patents recited a method that "ha[d] long been done

by cartographers creating paper maps" plus a generic "information handling

system" or "computer program product."  *Id.* at 1381.  Finding that the "problem

the [challenged] patent purportedly solve[d] ... [was] not specific to a computing

environment," the Court correctly concluded that the subject matter was patent-

ineligible.  *Id.* at 1381-82.  And with respect to the second patent, the Court found

that its claims were "directed to collection of information, comprehending the

meaning of that collected information, and indication of the results," which is well-

established to be an abstract idea.  *Id.* at 1378.  The claims of that patent also

"merely describe[d] an effect or result dissociated from any method by which it

[was] accomplished, [which] is usually not directed to patent-eligible subject

matter."  *Id.* (internal quotations omitted).

Unlike the *Int'l Bus. Machines* claims, the 223 Patent claims do not recite a

method that was known in the prior art, do not recite a process unrelated to

7

computer technology, do not relate to data collection or analysis, and do not baldly claim a result. On the contrary, the claimed technical approach is undisputedly novel (*see* Opening Brief, p. 35), enables a new type of electronic gaming, is limited to electronic gaming (*see id.* at 6-7, 23-24), and requires a series of specific, concrete processor rules (*see id.* at 6-7).

Accordingly, not a single case Appellees cite in connection with the first step of the *Alice* analysis supports a finding that the claims are directed to an abstract idea.

### 2. Appellees Fail to Distinguish Appellants' Cited Cases.

Not only do Appellees fail to cite a single case that directly supports their position, they fail to convincingly distinguish Appellants' cited cases.

Regarding *McRO*, Appellees merely recite the technological solution at issue in that case and then baldly state that "[t]here is no similar technological improvement or result claimed in the '223 Patent." Appellees Brief, p. 27. On the contrary, the similarities between the *McRO* claims and the 223 Patent claims are striking. Both sets of claims recite a series of novel "rules [that] are embodied in computer software that is processed by general-purpose computers." *McRO*, 837 F.3d at 1314. In both cases, "[i]t is the incorporation of the claimed rules, not the use of the computer, that improved [an] existing technological process ...." *Id.* (internal quotation omitted). And in both cases, the claims go "beyond merely

8

organizing existing information into a new form or carrying out a fundamental economic practice." *Id.* at 1315 (internal quotation omitted).  Rather, the claims recite "rules in a process specifically designed to achieve an improved technological result in conventional industry practice." *Id.* at 1316.  Appellees' contention that *McRO* is distinguishable is thus not only unsupported, but untenable.

Regarding *DDR Holdings*, Appellees merely argue that unlike in that case, the 223 Patent does not "provide[] a technological solution to a technological problem" because "some claims recite no means of carrying out the game steps, and the other claims require only a generic processor or program instructions to do so," Appellees Brief, pp. 27-28, but this again is misguided and conclusory.  As an initial matter, the parties agree that claim 44 of the 223 Patent is representative for purposes of the Section 101 analysis, and thus Appellees' reference to other claims is puzzling and beyond the scope of this appeal.  *See, e.g.*, Appellees' Brief at 19 n.2 ("The district court correctly held claim 44 as representative for the ineligibility analysis.").  Moreover, as Appellants have established throughout their briefing, the 223 Patent claims do in fact provide a technological solution to a technological problem by reciting a gaming system with new and improved functionality enabled by a claimed processor programmed with a claimed series of specific, concrete rules.  Although the patent in *DDR Holdings* related to an "internet-centric"

problem as Appellees point out, and the 223 Patent relates to an electronic gaming problem, both are rooted in computer technology.  Appellees attempt to distinguish *DDR Holdings* thus also falls flat.

Appellees' attempt to distinguish *Data Engine* is similarly vapid.  Appellees Brief, p. 28.  They point out that "the claimed technological improvement [in *Data Engine*] 'allowed computers, for the first time, to provide rapid access to and processing of information in different spreadsheets,'" *id.* (quoting *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1008 (Fed. Cir. 2018)), but they neglect to mention that this new functionality was purely the result of a novel program running on generic computers.  Just as the programming in *Data Engine* "allowed computers, for the first time, to provide rapid access to and processing of information in different spreadsheets," the claimed subject matter of the 223 Patent allows computerized gaming devices, for the first time, to provide a particular type of skill-based game.  *Data Engine* and the instant case are analogous.

And finally, Appellees suggest that the *Enfish* claims are distinguishable because the claimed "self-referential table" offered "increased flexibility, faster search times, and smaller memory requirements," Appellees Brief, p. 28 (quoting *Enfish*, 822 F.3d at 1337), but they again totally ignore that the claimed invention in that case was a program running on a "general-purpose computer" that provided a "specific improvement to computer functionality."  *Enfish*, 822 F.3d at 1338.

The 223 Patent claims are again remarkably similar, and Appellees have again failed to provide any non-conclusory arguments to the contrary.

Accordingly, Appellees have failed to meaningfully distinguish any of Appellants' cases, further underscoring the persuasiveness of these cases.

**B.    Patent-Eligibility Does Not Turn on Whether a Human Could Theoretically Engage in Analogous Activity Without a Computer.**

Appellees' argument that the 223 Patent claims are ineligible because "the claimed rules for playing a game can be carried out by humans using a standard deck of cards," Appellees' Brief, pp. 20-22, is also legally and factually misguided. As an initial matter, this Court has rejected similar arguments that merely compare the claimed subject matter to non-computer analogues. The Court explained in *Data Engine*, for example:

> Google avers that humans have long used tabs to organize information. It cites tabbed notebooks, binder dividers, file folders, and sticky Post-it notes as well-known examples of organizing information using tabs. We agree that tabs existed outside the context of electronic spreadsheets prior to the claimed invention. ***It is not enough, however, to merely trace the invention to some real-world analogy....*** Google fails to appreciate the functional improvement achieved by the specifically recited notebook tabs in the claimed methods.

*Data Engine*, 906 F.3d at 1011 (emphasis added) (internal citation omitted). Just as in *Data Engine*, Appellees fail to appreciate the functional improvement

11

achieved by the specifically recited processor rules in the 223 Patent's claims, namely the birth of a new type of game not possible on prior art gaming devices.

Moreover, as a factual matter, the list of hypothetical card game "rules" Appellees set forth on page 21 of their brief are not in fact rules for playing a game, but rather they are a set of programmatic instructions for making a game possible. Actual rules for this particular game would be something like the following:

> (1) player is presented with a 3x3 configuration of cards face up,
> (2) player decides whether to play the game,
> (3) if player has decided to play the game, he places a wild card on one of the face-up cards,
> (4) if the face-up cards, including the placed wild card, create one or more complete lines of like-symbols, the player wins a prize.

Of course, the 223 Patent claims do not recite anything resembling these rules. Thus, Appellees' argument that the 223 Patent recites "rules for playing a game" is not even factually accurate.

Finally, Appellees' suggestion that the invention of the 223 Patent is not "properly claimed," Appellees' Brief, pp. 21-22, is baseless because the 223 Patent claims recite a specific and concrete set of rules for a processor to follow in exactly the same way the *McRO* Court considered to be "properly claimed." The Court in that case drew a distinction between claims reciting a set of rules (i.e., properly

12

claimed) and claims reciting mere results that raise preemption concerns (i.e., not properly claimed).

> Defendants do not dispute that processes that automate tasks that humans are capable of performing are patent eligible if properly claimed ....  We therefore look to whether the claims in these patents focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery....  Here, the structure of the limited rules reflects a specific implementation not demonstrated as that which any animator engaged in the search for an automation process would likely have utilized....  The claim uses the limited rules in a process specifically designed to achieve an improved technological result in conventional industry practice.  Claim 1 of the '576 patent, therefore, is not directed to an abstract idea.

*McRO*, 837 F.3d at 1313-16 (internal citations and quotations omitted).  Like in *McRO*, the 223 Patent recites a series of specific processor rules that do not merely claim a result or preempt the field of skill-based gaming, and accordingly its subject matter is "properly claimed."  *See* Appx1822 (¶223, Appellants' expert K. Harrigan's report, stating, "Each of the claims at issue do far more than recite a mere desired result of an electronic game, but rather, recite a specific technical solution for accomplishing the goals of elevating the level of skill and reducing the level of chance in electronic gaming").

Accordingly, the 223 Patent is directed to a technological solution to a technological problem and is patent eligible, notwithstanding the fact that it utilizes

generic hardware and further notwithstanding Appellees' factually off-base hypothetical card game analogy.

## II. *ALICE* STEP TWO: THE CLAIMS RECITE AN INVENTIVE CONCEPT.

Appellees' argument regarding *Alice* step two is largely repetitive of its argument regarding step one. They argue that the sequence of processor steps recited in the 223 Patent claims cannot be an inventive concept because they are part of the abstract "rules for playing a game." *See, e.g.*, Appellees' Brief, p. 30 ("Simply carrying out abstract steps on a such a generic CPU or microprocessor is insufficient to pass *Alice*'s Step 2."). This is not surprising, as Appellees' expert admitted that the testing and automatically displaying combination of elements was not routine or conventional in the prior art, leaving Appellees with a single avenue for defending the district court's finding of patent-ineligibility under step two. *See* Opening Brief, p. 35. Because the claimed testing and automatically displaying elements are not "rules for playing a game," Appellees' step two argument also fails.

### A. The Claimed Processor Steps Are Not Game Rules.

As discussed *supra* in connection with *Alice* step one and in Appellants' Opening Brief (pp. 36-38), the claimed processor rules that make the game possible are not themselves rules for playing a game. Appellees argue that "rules for playing a game" can be "invisible to the game player," Appellees' Brief, p. 34,

14

but they cite no support or even provide any argument for why that is true.  On the contrary, a fundamental aspect of game rules is that they are understood by the players and govern the players' actions.  Hidden processes run on a machine that enable human gameplay on that machine, while related to a game, cannot be said to be "rules for playing a game" under any reasonable interpretation of that phrase. By Appellees' logic, every single process run on an electronic gaming system— from the counting of inserted coins to the processing of input and display data— would absurdly be considered rules for playing a game, as each would be essential to the gaming system's normal operation.

The *In re Smith* and *In re Marco Guldenaar* cases Appellees cite are unavailing.  Appellees state that "[i]n *In re Smith*, this Court held that a claim step requiring 'shuffling the physical playing cards' was part of the abstract idea of rules of a game even though it was not performed by the player and was a precursor to the player involvement," Appellees' Brief, p. 35, but the Court made no such finding.  Rather, the Court rejected the shuffling step as providing an inventive concept because "shuffling and dealing a standard deck of cards are purely conventional activities."  *In re Smith*, 815 F.3d at 819.  Similarly in *In re Marco Guldenaar*, 911 F.3d at 1161, the Court held that "the steps of placing a wager, rolling the dice, and paying a payout amount ... [were] conventional."  In neither of these cases did the Court consider shuffling or dice to themselves be

abstract. And unlike in these cases, Appellees' expert admitted that the claimed processor steps at issue are not conventional.

Accordingly, the claimed processor steps, including the testing and automatically displaying elements, are not abstract ideas, but rather are non-abstract, unconventional inventive concepts.

### B. The 223 Patent Solves a Technical Problem, Not Just a Legal Problem.

The 223 Patent claims recite a processor that is explicitly programmed with a specific algorithm that enables a new type of game, not merely the rules of a game with the added limitation to play it on a computer. The development of the 223 Patent's claimed subject matter thus required technological know-how and problem-solving. *See, e.g.*, Appx1744-1745 (¶42). Appellees attempt to discount the technical development of the claimed processor by arguing that "running afoul of certain state gambling laws ... is the problem the invention intended to solve," Appellees' Brief, pp. 32-33, but the ultimate goal in no way informs whether technical innovation was required to achieve it or whether the claims embody that technical innovation. *See, e.g.*, *Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.*, 520 F.3d 1358, 1364 (Fed. Cir. 2008).

Appellees' cited case *cxLoyalt*, 986 F.3d at 1378 does not support their position. That case did not turn on whether the inventor was motivated by a legal obstacle, but rather the Court found the claims to lacked an inventive concept

16

because "the claims solve[d a] purported problem by applying an abstract idea using conventional techniques specified in functional terms and at a high degree of generality."  As Appellants have established, the claimed technique of the 223 Patent was indisputably unconventional and is specifically claimed.  *cxLoyalty* is thus inapposite.

## C.    Appellants Did Not Waive Arguments or Admit Any Claims Lack an Inventive Concept.

Appellants did not make any of the waivers or admissions Appellees accuse Appellants of making, which is apparent by simply examining Appellees' cited support.  Regarding Appellees' contention that "Savvy Dog waived its ordered combination argument," for example, the quoted oral argument excerpt from the hearing on the motion to dismiss merely explains that claim 44 is "not a method claim" and thus does not technically have "steps."  Appellees' Brief, pp. 36-37.  Although Appellants' attorney explained that the "game processor as configured is an element," that claimed game processor ***element*** contains the ordered processor steps at issue – the same steps Appellees now bizarrely contend Appellants cannot rely on.  Appellees' contention that Appellants waived its ordered combination argument is thus purely semantic and ultimately baseless.  *See* Appx1664-1665 (arguing, "These inventive concepts include the requirements that the processor be configured for [testing] and automatically displaying an actual game to be played"); Appx1670-1671 (explaining that the game processor of Claim 44 is

17

configured to perform the testing step, before the automatically displaying step, before the activation of game play in).  Whether the Court considers the claims as reciting an ordered combination of steps or a single processor programmed to carry out an ordered combination of steps is inconsequential.

Regarding Appellees' contention that "Savvy Dog has conceded that the 223 Patent claims that do not recite a game processor for performing the game rules (i.e., claims 1, 3, 5-7, 11, 25, 27, 29-31, 33, 37-42, and 51-56) do not recite an inventive concept," Appellees' Brief, p. 30 (citing Appx406-407 at 40:21-41:1), the sentence immediately following Appellees' quoted passage clarifies that no admission was intended.  As Appellants' counsel explained, "I wanted to make that clear at the outset because there are a lot of claims in this patent and there's also been a public disclaimer of the claims that related to financial transactions, and so many of those claims are gone."  Appx406-407, 41:2-5.  Thus, Appellants' counsel was merely attempting to direct the district court's attention to the representative claim and away from claims that had been disclaimed.  Appellees' focus on this passage of oral argument thus again misrepresents the below proceedings.

**D.    The Ordered Combination of Processor Steps Can and Does Constitute an Inventive Concept.**

Appellees contend that "reordering known steps of game play cannot be the inventive concept," Appellees' Brief, p. 39, but this both misstates the nature of the claimed subject matter and contradicts Supreme Court precedent.  First, as

discussed *supra* and in Appellants' Opening Brief, the 223 Patent is not directed to steps of game play but rather processor steps in a gaming system. Appellees' reliance on *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1169 (Fed. Cir. 2019), which turned on the ordered combination being an abstract idea, is thus misplaced. And second, *Alice* explicitly states that the step two analysis requires considering the claim elements "both individually and 'as an ordered combination.'" *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208 (2014) (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 79 (2012)). Accordingly, the order of the testing and automatically displaying steps recited in the claims is fertile ground for finding an inventive concept. And as Appellees completely ignore, their expert effectively admitted that it is an inventive concept. *See* Opening Brief, p. 35.

The 223 Patent thus is not only directed to patent-eligible subject matter under *Alice* step one, but it also recites an inventive concept under *Alice* step two. The Court should accordingly reverse the district court's finding of patent ineligibility.

19

**III.  "AN ACTUAL GAME TO BE PLAYED" MEANS "THE GAME TO BE PLAYED, INCLUDING AN OTHERWISE UNKNOWN SYSTEM-GENERATED ATTRIBUTE OF IT."**

> **A.    The Claim Language Suggests a Meaning of "Actual Game to Be Played" Broader than "Constructed Game Field."**

The claims require "constructing *a field*," "testing *the game field* prior to displaying **the game**," and then "displaying **an actual game to be played**." Appx140-141 (claim 44) (emphasis added).  As Appellants explained, this distinction between the constructed "game field" and the displayed "actual game to be played" strongly suggests that the field and the displayed game have distinct meanings.  Opening Brief, pp. 41-44.

Appellees respond by arguing that the doctrine of claim differentiation "is not applicable to terms within the same claim."  Appellees' Brief, p. 55.  While technically true (as claim differentiation, strictly speaking, looks for differences among independent and dependent claims), this Court has repeatedly held that different words within the same claim are also presumed to have different meanings.  *See, e.g., Bd. of Regents of the Univ. of Texas Sys. v. BENQ Am. Corp.*, 533 F.3d 1362, 1371 (Fed. Cir. 2008) ("The fact that the claim distinguishes between 'each pre-programmed code' and 'the matched one or more pre-programmed codes' is significant.  Different claim terms are presumed to have different meanings."); *Hill-Rom Servs., Inc. v. Matal*, 716 F. App'x 996, 1001 (Fed. Cir. 2017) ("The presence of both 'periodically' and 'at regular intervals' in

20

amended claim 14 strongly suggests that the term 'periodically,' standing alone, is not limited to diagnostic checks that occur at regular intervals.") (citing *CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2000)).  *See also Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1254 (Fed. Cir. 2010) ("Where a claim lists elements separately, 'the clear implication of the claim language' is that those elements are 'distinct component[s]' of the patented invention.").  Appellees thus completely fail to rebut the proposition that the "construct[ed] ... game field" and the "display[ed] ... actual game to be played" presumptively have different meanings.

Appellees' reference to claim 45 is also unavailing.  Appellees' Brief, p. 45. That claim's recital of an "additional game field" merely refers to a game field other than the "game field" of claim 44.  It in no way suggests that the "actual game to be played" is itself a constructed game field.  Claim 45 contemplates, for example, that the claimed system could display an actual game to be played as well as a game field that differs from the game field of the first game.  While a gaming system could potentially satisfy claim 45 by presenting two constructed game fields at the same time, the claim does not explicitly require that, and thus it does not require Appellees' interpretation of claim 44.

Indeed, claim 46, which depends from Appellees' cited claim 45, undercuts their position.  That claim recites, "[t]he electronic gaming system of claim 45

21

wherein the additional game field *is for* a next game to be played." Appx141

(emphasis added). The claim again draws a distinction between a "game field" and

a "game to be played," directly indicating that they are not synonymous by stating

that the game field "is for" a next game to be played rather than merely "is" a next

game to be played. With this additional clue from claim 46, a skilled artisan would

further understand that a game field is not itself the game, and that previewing a

game to be played would not necessarily entail displaying a constructed game

field.

> **B.    The 223 Patent's Disclosure Contemplates that the
> Previewed Game Does Not Require the Constructed Game Field.**

Appellees argue that Appellants' proposed construction of "an actual game

to be played" runs counter to the 223 Patent's disclosure because it would

encompass preview screens that "only preview minimal information about a game

(such as a potential payout amount)," Appellees' Brief, p. 42, but this argument

also has multiple fatal shortcomings.

As an initial matter, Appellees' contention that such a preview screen

"would not increase player skill—i.e., would not impact whether the outcome of

play during the game would be controlled by the person playing the game," *id.*

(internal quotation omitted) is obviously false. Presenting a potential payout

amount in lieu of the completed game field when introducing the actual game to be

played would not guarantee that the player would ultimately receive that amount.

Rather, the player would need to use his or her skill, once the game is initiated, to win that maximum award. In fact, presenting only a maximum payout amount in a game preview screen would increase the level of skill required to play the game, as the player would potentially have limited time to make a selection after being presented with the game field at the start of the game. Thus, a preview screen presenting the game to be played with potential results is consistent with the inventor's intent and his invention.

Second, Appellees' argument that Appellants' proposed construction deviates from the disclosed invention because "a mere attribute of a game field—such as a payout—may not be something actually played by the player," Appellees' Brief, pp. 46, flatly misrepresents Appellants' position. Appellants' proposed construction of "an actual game to be played" is "the game to be played, *including* an otherwise unknown system-generated attribute of it," not merely the attribute by itself. In other words, the presentation of that potential payout amount could be part of a game to be played. That is apparent from Appellants' proposed construction.

Consider the following hypothetical, for example, which demonstrates that the claimed invention encompasses the "potential payout" embodiment Appellees contemplate:

> A man encounters an electronic gaming system in an Ohio bar. The screen explains the game to be played. He will be presented with a 3x3 matrix of symbols and will be able to convert any one symbol into a wild symbol. He will have 30 seconds to place the wild symbol. He will then win an award based on the type and number of three-in-a-row combinations formed using the wild symbol. The screen also contains a box that says, "MAX PRIZE IN NEXT GAME: $5. INSERT $1 TO PLAY NOW!"

The man in this hypothetical has not been presented with a constructed game field, but he has been presented with an actual game to be played. Part of the game, in this instance, entails a limited amount of time after seeing a game field to place the wild symbol. He is not merely playing the max prize of $5, as Appellees suggest in their brief. He is instead presented with a game in which he knows in advance he can win up to $5 by playing. Nothing in the 223 Patent suggests that the above-described gaming system would fall outside of the claims.

In fact, a passage of the 223 Patent Appellees cite as support for their claim construction position demonstrates that Appellants' proposed construction is correct. Appellees' Brief, p. 58 (quoting Appx138, 11:20-23). That passage reads:

> In the context of the electronic game having an array of symbols as described herein, the game preview screen can be constructed and displayed without the need for a player to do anything other than to select "Play." ***In this case, the preview screen could actually be the results screen, displaying the game outcome.*** Such a preview screen could display a winning or a non-winning combination.

24

Appx138, 11:14-23 (emphasis added).  This passage discloses that the preview screen can present a result, which is essentially the "potential payout" Appellees' brief focuses on.  Displaying "a winning or a non-winning combination," e.g., "cherry-cherry-cherry" or "cherry-bell-lemon," combined with a typical reference table with payout information, is no different than presenting a prize number.  Accordingly, Appellees' representation that "[n]ot one embodiment describes previewing a game to a player that is not a constructed game field of symbols," Appellees' Brief, p. 47, is disproved by the very evidence they cite as support.

### C.    The District Court's Construction Improperly Excludes Preferred Embodiments.

As Appellants explained in their Opening Brief, only Appellants' proposed construction captures the above-discussed embodiment (i.e., where the game to be played includes the results screen) and the embodiment in which the user can bump actual or simulated "reels" during game play.  Opening Brief, pp. 44-47.  This fact further confirms that Appellants' proposed construction is correct.

With respect to the embodiment where the preview screen is the results screen, Appellees contend that the previewed "winning or [] non-winning combination" refers to a winning or a non-winning game field, Appellees' Brief, p. 59, but this is facially incorrect.  The 223 Patent specification and claims specifically refer to "combinations" as winning lines of symbols rather than winning complete game fields.  Representative claim 44, for example, recites:

25

> constructing a *field* having a plurality of elements for the interactive game display wherein each element includes a game symbol from a plurality of predetermined game symbols;
> determining at least one winning **combination** for each play of the game;
> testing the *game field* prior to displaying the game to the player to ensure that a winning **combination** more valuable than the determined winning **combination** is not generated inadvertently in completing the field

Appx140-141 (emphasis added).  If Appellees' interpretation of "combination" were correct, claim 44 would be nonsensical.  *See also, e.g.*, Appx133, 2:25-27 ("Each winning combination of symbols on the field of game symbols is displayed to the player.").  Appellees' contention that the district court's construction captures this preferred embodiment because "combinations" are "game fields" is thus specious.  Only Appellants' proposed construction captures this disclosed embodiment.

Regarding the "reels" embodiment, Appellees' representation that Appellants failed to address it in the below proceedings is false.  Appellants stated in their Opening Claim Construction Brief, for example:

> A sixth embodiment of the preview screen is where "[t]he preview display could also be implemented in other forms of electronic or electromechanical games. For example, it could be used in the context of an electronic or electromechanical slot machine having a plurality of spinning reels["] ....  Only [Appellants'] construction ... captures the essence of each of the inventor's disclosed embodiments.

26

Appx2160-2161.  Moreover, Appellees' representation that "this nudge embodiment can be fully practiced without any unknown symbols," Appellees' Brief, p. 61, ignores the nature of reels, which would necessarily reveal previously hidden symbols of the game field as the reels are rotated.  The below illustration demonstrates the point made in Appellants' Opening Brief (p. 46):



As depicted in this illustration, an embodiment in which reels can be nudged by just one position necessarily includes two hidden rows of the game field.  A preview of the viewable 3x3 matrix would thus not present a constructed game field under the district court's construction, as 40% of the constructed game field

27

would be out of view.[2]  By contrast, the reels embodiment would indisputably fall within Appellants' proposed construction.

Appellees' citation to *Pacing Techs., LLC v. Garmin Int'l, Inc.*, 778 F.3d 1021, 1026 (Fed. Cir. 2015) is inapposite, as that case merely held that "[j]ust because an embodiment does not expressly disclose a feature does not mean that embodiment excludes that feature."  Unlike in *Pacing Techs.*, the reels embodiment necessarily excludes presenting a fully constructed game field because nudging a reel will always reveal a new symbol.

Finally, Appellees' citation to *Apple Inc. v. Andrea Elecs. Corp.*, 949 F.3d 697, 708 (Fed. Cir. 2020) for the proposition that "every claim does not need to cover every embodiment ..., particularly [when] the plain language of a limitation of the claim does not appear to cover that embodiment," Appellees Brief, p. 58, is misplaced.  This Court holds that claims should generally be construed to capture the preferred embodiments, and that deviation from this rule is only appropriate where the claims clearly focus on a subset of disparate embodiments.  *See, e.g.*, *Nobel Biocare Servs. AG v. Instradent USA, Inc.*, 903 F.3d 1365, 1381 (Fed. Cir.

---

[2] Although Appellees argue that whether the reels "embodiment could theoretically be practiced with unknown symbols [does] not weigh against the district court's claim construction," they present no argument for how "the constructed game field" could omit a substantial number of symbols in the actual game.  (Appellees' Brief, p. 61 n.2.)  Nor can they, as the preview screen in such an embodiment would present less than a constructed game field.

2018), *as amended* (Sept. 20, 2018) ("Although it is true that the fact that one construction may cover more embodiments than another does not categorically render that construction reasonable, there is a strong presumption against a claim construction that excludes a disclosed embodiment.  Because the claim language does not require the exclusion of those embodiments, and there is no basis in the intrinsic record for excluding them, Nobel has not overcome this presumption."). In *Apple*, for example, the Court justified excluding a preferred embodiment because the asserted claims plainly did not cover the embodiment and other claims in the patent were explicitly directed to that embodiment.  In the instant case, by contrast, the asserted claims do not plainly exclude the "results screen" and "reel" embodiments, and Appellees have not pointed to any unasserted claims that more clearly focus on these embodiments.

### D.    Appellees' Cited Prosecution History Is Irrelevant to Understanding "Actual Game to Be Played."

Appellees appear to concede that the prosecution history passage the district court relied upon for its construction of "actual game to be played" does not constitute a disclaimer or lexicography.  *See, e.g.*, Appellees' Brief, pp. 48-54. Rather, they argue that "courts 'may look to the prosecution history for guidance without having to first find a clear and unmistakable disavowal' for terms which do not have ordinary and customary meaning."  *Id.* at 49 (quoting *Iridescent Networks, Inc. v. AT&T Mobility, LLC*, 933 F.3d 1345, 1353 (Fed. Cir. 2019)).

29

That line of cases is inapplicable here, as "an actual game to be played" has an ordinary meaning that not only a skilled artisan, but also a lay judge or jury, would readily understand. *See* Opening Brief, pp. 41-44. Indeed, Appellees fail to even argue that "actual game to be played" does not have a plain and ordinary meaning.

Moreover, even if the Court were to consider the prosecution history despite the plain meaning, the portions of the prosecution history the district court and Appellees rely on all illuminate to the meaning of "game field" rather than "an actual game to be played." *See, e.g.*, Appellees' Brief, p. 50 ("[T]he applicant explained that its amendment to the 'presenting the field of game symbols' limitation meant 'the actual game that the player would play is displayed before the player makes any commitment to playing the game.'") (quoting Appx877). Appellants do not dispute that a constructed game field *can* be an actual game to be played under the claim language, but as a matter of basic logic, that does not imply that the meaning of an "actual game to be played" is *limited* to such a constructed game field. The prosecution history reinforces the former proposition (i.e., constructed game field → actual game to be played) but does not support the latter (i.e., actual game to be played → constructed game field). The district court's reliance on the prosecution history to limit the actual game to be played limitation to a constructed game field was thus erroneous for this additional reason, and Appellees' arguments fail to suggest otherwise.

## CONCLUSION

For the reasons set forth above, Appellants request that the Court grant the relief requested in Appellants' Opening Brief.

Dated: May 9, 2023

Respectfully submitted,

/s/ Steven G. Hill
Steven G. Hill
David K. Ludwig
Hill, Kertscher & Wharton
3625 Cumberland Blvd., Suite 1050
Atlanta, GA 30339
Phone: 770-953-0995
Fax: 770-953-1358
sgh@hkw-law.com
dludwig@hkw-law.com

*Counsel for Appellants*

31

**CERTIFICATE OF SERVICE**

I hereby certify that, on the 9th day of May, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which thereby served a copy upon all counsel of record via email or electronic means.

/s/ Steven G. Hill
Steven G. Hill

## CERTIFICATE OF COMPLIANCE

I, Steven G. Hill, counsel for Appellants and a member of the Bar of this Court, certify that the attached Appellants' Reply Brief is proportionately spaced, has a typeface of 14 points or more, and contains 6,987 words.

Dated: May 9, 2023                  Respectfully submitted,

/s/ Steven G. Hill
Steven G. Hill
David K. Ludwig
Hill, Kertscher & Wharton, LLP
3625 Cumberland Blvd., Suite 1050
Atlanta, GA 30339
Phone: 770-953-0995
Fax: 770-953-1358
sgh@hkw-law.com
dludwig@hkw-law.com

*Counsel for Appellants*